EDMOND J. MURPHY *vs.* CITY OF CAMBRIDGE & others
(and a companion case[1]).

Middlesex.    February 7, 1961. — March 31, 1961.

Present: WILKINS, C.J., WHITTEMORE, CUTTER, KIRK, & SPIEGEL, JJ.

*School and School Committee.    Equity Pleading and Practice,* Declaratory
proceeding.

Certain employees with tenure in their respective positions in the school
department of a city had no rights with respect to new positions in the
department of assistant superintendent, assistant headmaster, principal,
and submaster established by a vote of the school committee also ap-
pointing such employees thereto and adopting a budget for the next
year providing for the payment of the salaries of the new positions
where it appeared that about a year after the committee's action the
voters disapproved it in a referendum at a city election, that about three
months after the referendum the committee by voting to "[accept] the
results of the Referendum and . . . to honor the mandate of the voters,"
and to strike the salaries for the new positions from its budget, had
decided that its earlier action should be of no effect, that the appointees
had no contracts respecting the new positions and had performed no
services therein, and that no provision for their compensation therein
had been made by the city council.    [341]
In a suit in equity presenting a proper case for declaratory relief under
G. L. c. 231A, the bill should not be dismissed where the result on the
merits is adverse to the plaintiff, but a declaratory decree accordingly
should be entered.    [342]

Two BILLS IN EQUITY, filed in the Superior Court on March
5, 1958.

The suits were heard by *Noonan, J.*

*A. Kenneth Carey,* for the plaintiffs.

*Richard D. Gerould,* City Solicitor, for the defendants.

WHITTEMORE, J.    These are the plaintiffs' appeals from
final decrees in the Superior Court which dismissed two
bills in equity for declaratory decrees brought by five pro-
fessional employees in the school department of Cambridge

[1] The companion case is John W. Murphy & others *vs.* City of Cambridge &
others.

against the city and the members of the school committee seeking a declaration as to the validity of a referendum petition and the ensuing vote on November 5, 1957. Demurrers were overruled.

The bills alleged and the answers admitted the following: In a series of votes culminating in a vote in open session on December 18, 1956, the school committee voted to establish seventeen new positions, to appoint thereto named persons including the five plaintiffs, and to adopt a budget for the year 1957 which made provision for payment of the salaries for the new positions; the referendum vote on November 5, 1957, was adverse; the school committee on February 18, 1958, voted "that, in accordance with the will of the voters of Cambridge who, on November 5, 1957, voted 'No' 21,704 to 10,400 on Referendum . . . the Cambridge School Committee record its acceptance of the results of the Referendum and its intention to honor the mandate of the voters."

The evidence showed that earlier at the February, 1958, meeting the committee also voted "that the sum of $2,000.00 for legal fees to test the validity of the referendum be stricken from the 1958 budget," and "that the salaries in the sum of $16,500.00, covering the position of *one assistant superintendent of schools, two assistant headmasters at High and Latin School,* one vocational and placement counselor, *a principal of Abraham Lincoln School,* two assistant directors of physical education and *five submasters,* be stricken from the 1958 budget" (emphasis supplied). The pleadings show that the plaintiffs had been appointed, respectively, in the categories emphasized in the foregoing quotation, one of the five plaintiffs having been appointed one of five submasters.

We do not reach several issues argued, including, notably, the issue whether the action of the committee was legislative, and hence subject to the referendum, or executive and solely for the committee. See *Gorman* v. *Peabody,* 312 Mass. 560.

Prior to the February, 1958, votes, the plaintiffs had only expectancies in respect of their new employments. They

show no contracts. It was in evidence that they performed no duties in the new positions and that no provision was made for their compensation therein by the city council. We assume that the plaintiffs had tenure in the positions which they were occupying at the time of the 1956 votes, so that they could be dismissed therefrom only by compliance with the procedure prescribed by G. L. c. 71, § 42. They would have, however, no tenure in the new positions until they had served three years therein; and in the meantime the committee was free to act. *Kelley* v. *School Comm. of Watertown,* 330 Mass. 150, 152–154.

The votes in February, 1958, effectively ended the plaintiffs' expectancies. The decision of the committee to "[accept] the results . . . and . . . honor the mandate" was not conditional on the validity of the referendum nor was it an interim decision. What the committee was recognizing and honoring was the view of 21,704 voters, in disapproval of the 1956 action. It is not important that the votes creating the positions and making appointments thereto were not in terms rescinded. The mandate of the referendum was that the votes be of no effect. Honoring that mandate meant accepting for future action the premise that they were of no effect. It meant operating the department without these positions and, with the elimination of the budget items, it meant in effect revoking the appointments. The decision of a school committee, subsequent to the 1956 committee, has been recorded that the department should be operated without these positions; there is no showing that any subsequent committee has reversed the decision and asserted the validity of the 1956 votes.

The "traditional supremacy" in respect of schools (*Lynch* v. *Fall River,* 336 Mass. 558, 559) is in the school committee from time to time in office. They are not to be deemed bound by the vote of a past committee to which they expressly decline to conform, at the behest of potential occupants of new positions who have no contract and no service or tenure in the positions.

The plaintiffs were not entitled to decrees in respect of the validity of the referendum and, arguably, the demur-

rers, in view of the limited allegations and prayers, should have been sustained. We need not decide that issue. The bills of complaint may be construed to ask whether in view of the votes and voter action set out therein the plaintiffs are entitled to be employed in the new positions and to require the school committee and the city to provide funds therefor. The bills having been heard, it is appropriate to make the construction. The interlocutory decrees overruling the demurrers are affirmed. The final decrees dismissing the bills are reversed. Final decrees are to enter adjudicating that in view of the February, 1958, votes of the school committee the plaintiffs have no rights in respect of the positions newly voted in 1956.

*So ordered.*