SCHOOL COMMITTEE OF WEST SPRINGFIELD *vs.*
FRANK KORBUT & others.

Hampden.    April 14, 1976. — December 31, 1976.

Present: HALE, C.J., KEVILLE, GOODMAN, GRANT, ARMSTRONG,
& BROWN, JJ.

*School and School Committee. Arbitration. Contract,* Collective bar-
gaining contract. *Municipal Corporations,* Collective bargaining.

An arbitrator appointed pursuant to a collective bargaining agreement
to determine whether a school committee had violated the agreement
in failing to reappoint a tenured teacher to the chairmanship of an
academic department exceeded the scope of his authority in order-
ing reinstatement of the teacher to the chairmanship position as that
decision was a matter of educational policy within the exclusive
managerial prerogative of the school committee under the provisions
of G. L. c. 71, § 37. [745-749] BROWN, J., concurring; GOODMAN, J.,
dissenting.

PETITION filed in the Superior Court on October 11,
1973, to vacate the award of an arbitrator.

The case was heard by *Griffin,* J.

*John J. Egan* for the defendants.

*Edward C. Peck, Jr.,* Town Counsel, for the School
Committee of West Springfield.

KEVILLE, J.    This is an application brought under G. L.
c. 150C, § 11, to vacate an award by the board of concil-
iation and arbitration (arbitrators) in a labor dispute
between the plaintiff school committee and one of its
teachers, the defendant Korbut. Also joined as defendants
are four officers of the West Springfield Education Asso-
ciation with which the school committee had entered into
the collective bargaining agreement underlying the dis-
pute. The defendants appeal from a decree of the Superior
Court vacating the award in part.

On the view we take of the case the facts found by the

arbitrators may be summarized briefly. Korbut, a tenured teacher in the West Springfield Senior High School, was appointed chairman of an academic department there for the 1970-1971 school year and reappointed for the 1971-1972 school year. In May, 1972, however, the school committee voted not to reappoint Korbut to the chairmanship for the ensuing school year because his performance in that capacity was believed to have been unsatisfactory. Apparently Korbut continued thereafter as an ordinary teacher in the school.

Korbut challenged the propriety of the school committee's action, and the matter was submitted to the arbitrators on two issues: (1) whether the school committee had violated the collective bargaining agreement in failing to reappoint Korbut, and (2) if so, what the appropriate remedy should be. In an award dated September 19, 1973, the arbitrators answered the first question in the affirmative, and directed that Korbut be reinstated as department chairman "forthwith" and that he "be reimbursed for lost compensation during the 1972-1973 school year." The collective bargaining agreement under which the arbitrators acted was for a one-year term which included the 1972-1973 school year, but its provisions had been renewed for the 1973-1974 school year. The award was based entirely on an article in the agreement concerning chairmanships of academic departments. That article, as interpreted by the arbitrators, provided that any such chairmanship carried a one-year term and was renewable only in the discretion of the school committee, but, in the circumstances of Korbut's case, it required that he be given written notice of the decision not to renew his appointment and an opportunity to be heard. Those procedures were not observed, though Korbut was orally advised by his immediate superiors in May, 1972, that they were not recommending his reappointment.

The decree appealed from, which was entered on March 1, 1974, without any evidence having been taken or findings made, modified the award by striking therefrom the order that Korbut be reinstated, and otherwise confirmed

it. The school committee took no appeal from the decree, and is therefore not entitled to a decree more favorable to it than the one entered. *Caron* v. *Wadas,* 1 Mass. App. Ct. 651, 652 (1974). We do not consider any question relating to the order limiting reimbursement for lost compensation to the 1972-1973 school year only. Since the defendants sought no relief from that order in the Superior Court (compare *Trustees of the Stigmatine Fathers, Inc.* v. *Secretary of Admn. & Fin.* 369 Mass. 562, 565-566 [1976]) and have not argued the point here (see Mass.R.A.P. 16 [a][4], as amended, 367 Mass. 921 [1975]), we deal only with the issue whether the order that Korbut be reinstated was properly struck from the award.

In addressing ourselves to that issue, we are mindful of the relatively narrow scope of judicial review available in cases involving arbitration awards. Among other things, the correctness of the arbitrators' interpretation of the collective bargaining agreement is not before us, as the parties, by submitting the matter to arbitration, empowered the arbitrators "to misinterpret the contract." *School Comm. of Leominster* v. *Gallagher, ante,* 195, 197 (1976). See *Cape Cod Gas Co.* v. *Steelworkers Local 13507,* 3 Mass. App. Ct. 258, 261 (1976). On the other hand, the question whether an arbitrator exceeded the scope of his powers is always open for judicial review. *Teachers Local 66* v. *School Comm. of Boston,* 370 Mass. 455, 466-467 (1976). That is the question for decision here.

We assume for purposes of the present case that the order of reinstatement was within the scope of the submission to arbitration agreed upon by the parties, and therefore that the arbitrators did not exceed the scope of their powers in that sense. But an arbitrator equally exceeds his powers if he reaches a particular result in response to a question put to him and one of the parties is a governmental agency lacking power to bind itself to that result or to delegate the power so to bind itself. *School Comm. of Hanover* v. *Curry,* 3 Mass. App. Ct. 151, 158 (1975), *S. C.* 369 Mass. 683, 685 (1976). *School Comm. of*

*Braintree* v. *Raymond,* 369 Mass. 686, 690 (1976). We are of the opinion that the school committee lacked such power here and hence that the order to reinstate Korbut was properly struck from the award.

The question whether a school committee may be required through arbitration to reappoint a teacher in a supervisory position on the ground that the failure to reappoint occurred without observance of procedures prescribed by a collective bargaining agreement (rather than by statute) appears to be one of first impression in this Commonwealth. See *Steele* v. *Haley,* 451 F. 2d 1105, 1106, (1st Cir. 1971). In our view, however, the *Hanover* and *Braintree* cases, *supra,* at least suggest a negative answer to that question. Those cases, like the present one, turned on the interplay between the permissible scope of collective bargaining by a school committee under G. L. c. 149, § 178I (as in effect prior to July 1, 1974), which authorized such bargaining as to "conditions of employment" so long as the bargain reached was not in conflict with other laws,[1] and the broad and undelegable managerial powers conferred upon school committees by such statutes as G. L. c. 71, §§ 37[2] and 38 (the latter as amended through St. 1971, c. 507).[3] Each of those cases involved an arbitra-

---

[1] Section 178I has since been repealed and replaced, in so far as relevant, by G. L. c. 150E, §§ 6, 7, effective July 1, 1974. St. 1973, c. 1078, §§ 1, 2, and 7. While § 7 of c. 150E gives a collective bargaining agreement precedence over a number of enumerated statutes, G. L. c. 71 is not among those enumerated, and the provisions of that chapter still prevail over a collective bargaining agreement subject to G. L. c. 150E. *School Comm. of Braintree* v. *Raymond,* 369 Mass. at 688-689.

[2] "It shall have general charge of all the public schools, including the evening schools and evening high schools, and of vocational schools and departments when not otherwise provided for. It may determine, subject to this chapter, the number of weeks and the hours during which such schools shall be in session, and may make regulations as to attendance therein."

[3] General Laws c. 71, § 38, reads in pertinent part: "It shall elect and contract with the teachers of the public schools, shall require full and satisfactory evidence of their moral character, and shall ascertain their qualifications for teaching and their capacity for the government of schools."

tion award ordering reinstatement of a teacher in a supervisory academic position which, contrary to the collective bargaining agreement, had been abolished by the school committee. It was held in each that the abolition of the position was the product of a policy decision falling within the exclusive managerial prerogative of the school committee, and that it was beyond the power of the committee to bind itself to arbitration which would interfere with that decision. The *Hanover* case, 3 Mass. App. Ct. at 157-159, *S. C.* 369 Mass. at 685. The *Braintree* case, 369 Mass. at 689-690. Contrast *Teachers Local 66* v. *School Comm. of Boston*, 370 Mass. at 462-464.

"Manifestly one of the most important duties involved in the management of a school system is the choosing and keeping of proper and competent teachers. The success of a school system depends largely on the character and ability of the teachers. Unless a school committee has authority to employ ... teachers it would be difficult to perform properly its duty of managing a school system." *Davis* v. *School Comm. of Somerville*, 307 Mass. 354, 362 (1940). The same is true of a school committee's power to appoint teachers freely to supervisory academic positions. See *Downey* v. *School Comm. of Lowell*, 305 Mass. 329, 331-332 (1940); *Kelley* v. *School Comm. of Watertown*, 330 Mass. 150, 152, 154 (1953). In the exercise of that power the school committee in the present case had an affirmative duty in the public interest to select the person as department chairman "whom they judged best fitted for it." *Jantzen* v. *School Comm. of Chelmsford*, 332 Mass. 175, 177-178 (1955). That power was "vested solely in the school committee" and "could not be delegated." *Demers* v. *School Comm. of Worcester*, 329 Mass. 370, 373 (1952).

It is equally well settled that the supremacy of a school committee in the appointment and reappointment of academic personnel lies "in the school committee from time to time in office." *Murphy* v. *Cambridge*, 342 Mass. 339, 341 (1961). *Sullivan* v. *School Comm. of Revere*, 348 Mass. 162, 165 (1964). The committee, "in deciding what will

promote good schools, may not be fettered by the action of a past committee beyond the express direction" of the governing statutes. *Ibid.* Compare *School Comm. of Braintree* v. *Raymond,* 369 Mass. at 689. The governing statutes here are G. L. c. 71, §§ 41 (as appearing in St. 1956, c. 132, §1) and 42A (as appearing in St. 1953, c. 269), pursuant to which a school committee may confer tenure in certain circumstances and thereby bind its successor committees. Section 41 permitted the school committee "to elect a teacher who has served in its schools for not less than one school year to serve at . . . [its] discretion" — that is, with tenure. *DeCanio* v. *School Comm. of Boston,* 358 Mass. 116, 117 (1970), app. dism. and cert. den. sub nom. *Fenton* v. *School Comm. of Boston,* 401 U.S. 929 (1971). Korbut had previously acquired such tenure as a *teacher,* but that could not prevent his removal from the supervisory position he had held. *Downey* v. *School Comm. of Lowell,* 305 Mass. at 331. *Kelley* v. *School Comm. of Watertown,* 330 Mass. at 152, 154. Section 42A limited the power of the school committee to demote a "principal or supervisor or professional employee performing the duties of a principal or a supervisor . . . who has served in that position for over three years." That section is not decisive here, for, assuming the chairmanship held by Korbut to be a position within the scope of § 42A, he did not hold it for the requisite period of time. Compare *Demers* v. *School Comm. of Worcester,* 329 Mass. at 372-373. Thus, Korbut had no statutory tenure in the chairmanship, and the statutes do not recognize an intermediary status between "tenure" and "nontenure" employees. See *DeCanio* v. *School Comm. of Boston,* 358 Mass. at 120.

To uphold the arbitrators' reinstatement order would therefore run counter to long established legislative policy in at least two respects: (1) it would allow the school committee to surrender its plenary power to appoint and reappoint academic personnel, and (2) it would tend to tie the hands of successor school committees in a manner not contemplated by the tenure statutes. If the Legislature had intended such a radical departure from estab-

lished policy when it enacted the municipal employees' collective bargaining law, we think it would have expressed that intention in explicit language. *DeCanio* v. *School Comm. of Boston,* 358 Mass. at 120, and cases cited. *School Comm. of Springfield* v. *Board of Educ.* 362 Mass. 417, 441 (1972), and cases cited.[4] We conclude, therefore, that the reinstatement order was beyond the power of the arbitrators.

*Decree affirmed.*

This case was initially heard by a panel composed of Justices Keville, Goodman and Grant and was thereafter submitted on the record and briefs to the other Justices, all of whom took part in this decision in accordance with the provisions of Mass.R.A.P. 24(a), 365 Mass. 872 (1974).

BROWN, J. (concurring in the result only). The majority, in my view, reaches very difficult issues which need not now be decided. See Smith, Edwards & Clark, Labor Relations in the Public Sector 902-908 (1974); Note, Public Sector Grievance Procedures, Due Process, and the Duty of Fair Representation, 89 Harv. L. Rev. 752, 757, n.28 (1976). It seems to me that the discussion and the resolution of the complex issues lurking in this case should await a more appropriate factual posture.

---

[4] Were we to assume that the arbitrators had the power to order Korbut's reinstatement at the time of their award in September, 1973, and at the time the final decree was entered in March, 1974, it is likely that reinstatement could not now be ordered in the absence of his nomination to the chairmanship by the superintendent of schools. That result would follow from the amendment of c. 71, § 38, by St. 1974, c. 342, approved June 11, 1974, which provides that "[n]o election, contract, or promotion of a teacher shall be made by a school committee unless such person shall have been nominated for such election, contract or promotion by the superintendent of schools." Compare St. 1965, c. 208, § 1; *Doherty* v. *School Comm. of Boston,* 363 Mass. 885 [1973]; *Bonar* v. *Boston,* 369 Mass. 579, 582-583 (1976).

GOODMAN, J. (dissenting). Rather than affirm the judgment of the court I would dismiss the appeal as moot. See *Hubrite Informal Frocks, Inc.* v. *Kramer,* 297 Mass. 530, 535-536 (1937). The question of reinstatement for the 1973-1974 school year is no longer viable; and, as the majority opinion points out, Korbut does not ask for reimbursement for lost compensation beyond that which he was awarded for the 1972-1973 school year. He has not asked for remand[1] to the arbitrators to make a determination of damages for the 1973-1974 school year. See *School Comm. of Braintree* v. *Raymond,* 369 Mass. 686, 690-691 (1976). Cf. *Doherty* v. *School Comm. of Boston,* 363 Mass. 885 (1973).

I cannot accept the implication in the discussion in the majority opinion (*supra* at 747-749, last two paragraphs) that the school committee cannot bargain with reference to procedures to be followed in the reappointment to non-tenured positions. The contract provides a hearing procedure in case there is a failure to reappoint, by which an incumbent can obtain the reasons for the school committee's action and an opportunity to present his side of the story. The agreement seems to do no more than require the school committee to comply with these provisions; the power to appoint still remains in the school committee. Such a requirement cannot be said to undermine the prerogatives of the school committee to set educational policy. Indeed, it may aid the school committee in making a more informed judgment. See *School Comm. of Cambridge* v. *LaChance,* 3 Mass. App. Ct. 710 (1975), holding valid procedures established in a collective bargaining agreement for the posting of vacancies and the processing of applications; *Cohoes City Sch. Dist.* v. *Cohoes Teachers Assn.* 50 App. Div. 2d 24 (N.Y. 1975), holding that a teacher who had been discharged without compliance by

---

[1] *Cohoes City Sch. Dist.* v. *Cohoes Teachers Assn.* 50 App. Div. 2d 24, 26 (N.Y. 1975). *Kennedy* v. *Continental Transp. Lines, Inc.* 230 F. Supp. 760, 762-763 (W.D. Pa. 1964). See *Teamsters Local No. 25* v. *Penn Transp. Corp.* 359 F. Supp. 344, 350 (D. Mass. 1973), and cases cited.

the school officials with evaluation procedures required by a collective bargaining agreement was entitled to reinstatement to a nontenured position (the court remanded the case to the arbitrator to provide that sanction); *Legislative Conference of City Univ.* v. *Board of Higher Educ. of N.Y.* 31 N.Y.2d 926 (1972), affirming 38 App. Div. 2d 478 (N.Y. 1972); *Central Sch. Dist.* v. *Livingston Manor Teachers Assn.* 44 App. Div. 2d 876 (N.Y. 1974); Note, Public Sector Grievance Procedures, Due Process, and the Duty of Fair Representation, 89 Harv. L. Rev. 752, 757, fn. 28 (1976), discussing the "extension of contractual just cause dismissal protection to probationary employees." See also *Teachers Local 66* v. *School Comm. of Boston,* 370 Mass. 455, 460-464 (1976). It is noteworthy that the New York cases cited above approved of the remedy of reinstatement to nontenured positions (distinguishing them from tenured positions).² And see *Board of Educ.* v. *Associated Teachers of Huntington, Inc.* 30 N.Y.2d 122, 128 (1972), in which the court held that provisions in a collective bargaining agreement for the arbitration of disputes regarding disciplinary action taken against tenured teachers were valid. The court said (Fuld, C.J.): "It [the grievance procedure including arbitration] assures teachers with tenure that no disciplinary action will be taken against them without just cause and that any dispute as to the existence of such cause may be submitted to arbitration. It is a provision commonly found in collective bargaining agreements in the private and public sectors and carries out Federal and State policy favoring arbitration as a means of resolving labor disputes [citing cases]." As to the power, generally, of a local governmental body to enter into an arbitration contract see *County of Middlesex* v. *Gevyn Constr. Corp.* 450 F. 2d 53, 54-55 (1st Cir. 1971); Annot., 20 A.L.R.3d 569 (1968).

---

² Cf. *Fayetteville-Manlius Cent. Sch. Dist.* v. *Fayetteville-Manlius Teachers Assn.* 51 App. Div. 2d 91, 92 (N.Y. 1976); *Pavilion Cent. Sch. Dist.* v. *Pavilion Faculty Assn.* 51 App. Div. 2d 119, 123-124 (N.Y. 1976), holding that reinstatement was an inappropriate remedy where a notice provision had been violated.