SCHOOL COMMITTEE OF WEST SPRINGFIELD *vs.* FRANK KORBUT & others.[1]

Hampden.    September 14, 1977. — December 5, 1977.

Present: HENNESSEY, C.J., QUIRICO, BRAUCHER, KAPLAN, & WILKINS, JJ.

*School and School Committee.   Arbitration.   Contract,* Collective bargaining contract.

The question whether an arbitrator acted in excess of the authority conferred on him is always open for judicial review. [791-792]
A demonstration that an arbitrator had made an error of law or fact in his consideration of a question referred to him would not warrant the vacation or modification of his award. [792-793]
It was within the authority of an arbitrator appointed pursuant to a collective bargaining agreement to order the reinstatement of a school teacher to a vacant supervisory position where the school committee had failed to follow procedures required by the agreement in determining not to reappoint him, and such an award did not interfere with the exclusive managerial prerogative of the committee in violation of G. L. c. 71, §§ 37 and 38. [793-798]

[1] Four officers of the West Springfield Education Association.

PETITION filed in the Superior Court on October 11, 1973, to vacate the award of an arbitrator.

The case was heard by *Griffin*, J.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*John J. Egan* (*Charles M. Healey, III,* with him) for the defendants.

*Robert Tassinari* for the plaintiff.

*Sandra C. Quinn,* for Massachusetts Teachers Association, amicus curiae, submitted a brief.

QUIRICO, J.   This is an application under G. L. c. 150C, § 11, to vacate an award by the Board of Conciliation and Arbitration (arbitrators) in a labor dispute between the plaintiff school committee and one of its teachers, the defendant Frank Korbut (Korbut).[2] The award ordered the reinstatement of Korbut as Coordinator of Language Arts at the West Springfield Senior High School and his reimbursement for lost compensation during the 1972-1973 school year over and above his regular compensation as a teacher. After hearing, a judge of the Superior Court struck the part of the arbitration award that directed Korbut's reinstatement, but otherwise confirmed it.[3] The defendants appealed to the Appeals Court from that part of the Superior Court decree striking the reinstatement award.[4] The Appeals Court affirmed the decree, holding that the reinstatement order was beyond the power of the arbitrators in that it invaded the school committee's plenary power to appoint and reappoint academic personnel.

---

[2] The court acknowledges, in addition to the briefs submitted by the named parties, the amicus curiae brief submitted by the Massachusetts Teachers Association.

[3] The judge did not take evidence or make findings and denied the defendants' request for a report of material facts, from which denial the defendants excepted. However, such exception is not at issue before us in that the defendants have argued, and the school committee conceded, that the facts as found in the arbitrators' opinion provide sufficient facts with which to proceed.

[4] The plaintiff school committee did not appeal from the Superior Court decree.

*School Comm. of W. Springfield* v. *Korbut,* 4 Mass. App. Ct. 743, 748-749 (1976).

The matter came before us for further appellate review, and for the sake of expediency in an already lengthy proceeding we entered an order vacating the Superior Court decree without accompanying opinion.[5] We ordered judgment to enter reinstating Korbut to the position of coordinator for the 1977-1978 school year, and reimbursing him for lost compensation during the 1972-1973 school year. We summarize below the facts taken from the arbitrators' award and detail our reasons for decision.

Korbut, a tenured teacher in the West Springfield Senior High School, was appointed to the additional position of Coordinator of Language Arts[6] there for the 1970-1971 school year and reappointed for the 1971-1972 school year. In May, 1972, the Supervisor of Language Arts and the school principal orally advised Korbut that they were not recommending him for reappointment, apparently because his performance in the capacity of coordinator was believed to have been unsatisfactory. Soon, thereafter, the school committee voted not to reappoint Korbut for the position for the ensuing school year. The post of coordinator was vacant for the school year 1972-1973, and remained so up until the time of our order. Although Korbut was not reinstated as coordinator, he apparently continued in his teaching position at the school.

On his nonreappointment, Korbut, acting pursuant to a collective bargaining agreement entered into by the school committee and the West Springfield Education Association,[7] started proceedings which resulted in arbitration of the matter. The two issues which were submitted to the arbitrators by the parties were: (1) whether the school

[5] S.J.C. Order, No. 924. September 16, 1977.

[6] Chairmanship of the school's English department.

[7] The collective bargaining agreement was entered into on May 27, 1971, and was for a one-year term which included the 1972-1973 school year. Its provisions, however, were renewed for the 1973-1974 school year.

committee had violated the collective bargaining agreement in failing to reappoint Korbut, and (2) if so, what the appropriate remedy should be. On September 19, 1973, the arbitrators issued an award finding that the school committee had violated the agreement, and directing that Korbut be reinstated as coordinator "forthwith" and "be reimbursed for lost compensation during the 1972-73 school year." The award was based on Article XIV of the agreement concerning chairmanships of academic departments. The arbitrators interpreted Article XIV to provide that a department chairmanship carried a one-year term, but also required that a chairman, whose failure to be reappointed stemmed from a predominantly disciplinary motive, be given written notice of the decision not to renew his appointment and an opportunity to be heard. Those notice and hearing procedures were not observed.

The defendant did not seek in the Superior Court, nor on appeal, relief from the arbitration award inasmuch as it limited Korbut's reimbursement for lost compensation to the 1972-1973 school year. Accordingly, we consider below only whether the order that Korbut be reinstated was properly struck from the award. Mass. R. A. P. 16 (a) (4), as amended, 367 Mass. 919 (1975).

1. *Availability of Judicial Review.*

The provisions of G. L. c. 150C concerning the recognition and enforcement of collective bargaining agreements were, at the time of the award here at issue, applicable to the collective bargaining unit of the teachers' association and the school committee through the operation of G. L. c. 149, § 178K (as amended through St. 1972, § 375).[8] Sections 11 and 12 of G. L. c. 150C set forth the standards by which the Superior Court may review, vacate or modify arbitrators' awards. Of the grounds stated in these sections, the school committee relies on two, namely that the arbitrators' determination exceeded the scope of their ref-

---

[8] General Laws c. 149, § 178K, has since been repealed by St. 1973, c. 1078, § 1, and its provisions are now covered by G. L. c. 150E, enacted by St. 1973, c. 1078, § 2.

erence (G. L. c. 150C, § 12), and that the reinstatement of Korbut exceeded their powers (G. L. c. 150C, § 11). Although we note the narrow scope of judicial review available when a matter submitted to arbitration has been decided, the question whether the arbitrators acted in excess of the authority conferred on them, as claimed in the present case, is always open for judicial review. *Teachers Local 66* v. *School Comm. of Boston,* 370 Mass. 455, 467 (1976). *Trustees of the Boston & Me. Corp.* v. *Massachusetts Bay Transp. Auth.,* 363 Mass. 386, 390 (1973).

2. *The Scope of the Arbitrators' Authority.*

(a) *Scope of reference.*   In seeking affirmation of the Superior Court decree, the school committee objects to the arbitrators' award as being beyond the scope of the question submitted for decision. The committee claims that the issue whether the collective bargaining agreement was violated was "changed" by the arbitrators to an issue concerning whether the nonreappointment of Korbut was for disciplinary purposes. Such inquiry, the committee argues, was in excess of the scope of reference and requires the vacating of the award of reinstatement. We disagree.

Granted that arbitrators must act within the scope of the reference to them, *Morceau* v. *Gould-Nat'l Batteries, Inc.,* 344 Mass. 120, 124 (1962), we nevertheless think that the arbitrators' consideration of the disciplinary motive behind Korbut's nonreappointment was secondary to and not a separate issue from a determination whether the notice and hearing provisions of the collective bargaining agreement had been violated. The claim that such consideration exceeded the scope of the matter referred seems, in fact, an objection that the arbitrators committed an error of law in interpreting and applying the notice and hearing terms of the collective bargaining agreement to a department chairman not reappointed due to disciplinary reasons. However, we are not to consider whether the arbitrators' interpretation of the collective bargaining agreement was correct. "If an arbitrator has committed an error of law or fact in arriving at his decision, a court will not upset the finding unless there is fraud involved."

*Trustees of the Boston & Me. Corp.* v. *Massachusetts Bay Transp. Auth.*, 363 Mass. 386, 390 (1973). *Greene* v. *Mari & Sons Flooring Co.*, 362 Mass. 560, 563 (1972). *Glenn Acres, Inc.* v. *Cliffwood Corp.*, 353 Mass. 150, 155 (1967). Based on such authority, the Superior Court could not vacate or modify the award even if it were demonstrated that the arbitrators made an error of law or fact in their consideration of the question. *Trustees of the Boston & Me. Corp.* v. *Massachusetts Bay Transp. Auth.*, *supra* at 392. Therefore, the school committee's contentions in this regard are without merit.

(b) *Power to order reinstatement.* The school committee also claims that the vacating of that part of the arbitration award ordering the reinstatement of Korbut as coordinator was proper in that the arbitrators' action was in excess of the powers conferred on them. The committee argues that the reinstatement award violates G. L. c. 71, §§ 37 and 38, by requiring the school committee to surrender decisions which are predominantly matters of educational policy to the judgment of the arbitrators. The Appeals Court agreed with that contention. We disagree and conclude that the reinstatement of Korbut was an appropriate remedy where the school committee's failure to reappoint took place "without observance of [the notice and hearing] procedures prescribed by [the] collective bargaining agreement." *School Comm. of W. Springfield* v. *Korbut*, 4 Mass. App. Ct. 743, 746 (1976).

General Laws c. 149, § 178I (as in effect prior to July 1, 1974), defined the permissible scope of collective bargaining by municipal employees. Section 178I authorized bargaining as to conditions of employment so long as the bargain reached was not in conflict with other laws.[9] The

---

[9] General Laws c. 150E, § 7, which repealed and replaced G. L. c. 149, § 178I, in part (see note 8, *supra*), gives collective bargaining agreements precedence over certain listed statutes. However, G. L. c. 71, is not among those enumerated, and, thus, "the provisions of that chapter still prevail over a collective bargaining agreement subject to G. L. c. 150E." *School Comm. of W. Springfield* v. *Korbut,* 4 Mass. App. Ct. 743, 746 n.1 (1976). *School Comm. of Braintree* v. *Raymond,* 369 Mass. 686, 688 (1976).

school committee argues that the bargaining agreement conflicts with G. L. c. 71, § 37, which gives the committee general charge of all the public schools, and with § 38 (as amended through St. 1971, c. 507), which provides that the school committee "shall elect and contract with the teachers of the public schools, shall require full and satisfactory evidence of their moral character, and shall ascertain their qualifications for teaching and their capacity for the government of schools."[10] In holding that the reinstatement decision of the arbitrators interfered with the "plenary" powers of the school committee as above enumerated in §§ 37 and 38, the Appeals Court relied on decisions of this court wherein we have defined some of the areas of a school committee's "exclusive prerogative." Cited are our decisions in *School Comm. of Hanover* v. *Curry,* 369 Mass. 683, 685 (1976), and *School Comm. of Braintree* v. *Raymond,* 369 Mass. 686, 690 (1976), wherein we held that the abolition by the school committee of certain supervisory academic positions was committed to the "nondelegable" and "exclusive" decision of the committee by G. L. c. 71, § 37. We held in those cases that it was beyond the power of the school committee to bind itself to arbitration which would interfere with such decision, and that the arbitration awards ordering the reinstatement of teachers to the supervisory positions were a nullity. *School Comm. of Hanover* v. *Curry, supra. School Comm. of Braintree* v. *Raymond, supra* at 689-690. In the *Braintree* case, we held that the school committee's managerial powers under G. L. c. 71, § 37, included the plenary power to abolish a supervisory position, even where the occupant of the position had statutory tenure. *Id.* at 689. See *Kaplan* v. *School Comm. of Melrose,* 363 Mass. 332, 336 (1973), and cases cited. In *Davis* v. *School Comm. of Somerville,* 307 Mass. 354, 362 (1940), in citing G. L. c. 71, §§ 37 and 38, we held that "[b]y long established legislative policy school committees are given general manage-

---

[10] General Laws c. 71, § 38, was later amended by St. 1974, c. 342, which amendment did not affect the above quoted language.

ment of the public schools including the election and the dismissal of teachers. . . . The success of a school system depends largely on the character and ability of the teachers. Unless a school committee has authority to employ and discharge teachers it would be difficult to perform properly its duty of managing a school system." Likewise, we have held that school committees have the plenary power to change the duties or rank of a teacher entrusted with special duties of management or direction. *Downey* v. *School Comm. of Lowell,* 305 Mass. 329, 331 (1940). See *Kelley* v. *School Comm. of Watertown,* 330 Mass. 150, 152, 154 (1953). In the exercise of that power school committees have "an affirmative duty in the public interest to select the person as department chairman 'whom they [have] judged best fitted for it.' " *School Comm. of W. Springfield* v. *Korbut,* 4 Mass. App. Ct. 743, 747 (1976), quoting from this court's decision in *Jantzen* v. *School Comm. of Chelmsford,* 332 Mass. 175, 177-178 (1955). For cases other than those above detailing the nondelegable authority of a school committee in the appointment and reappointment of academic personnel, see *School Comm. of Danvers* v. *Tyman,* 372 Mass. 106, 111-112 (1977); *DeCanio* v. *School Comm. of Boston,* 358 Mass. 116, 120 (1970), appeal dismissed and cert. denied sub nom. *Fenton* v. *School Comm. of Boston,* 401 U.S. 929 (1971); *Sullivan* v. *School Comm. of Revere,* 348 Mass. 162, 165 (1964); *Murphy* v. *Cambridge,* 342 Mass. 339, 341 (1961); *Demers* v. *School Comm. of Worcester,* 329 Mass. 370, 373 (1952); *O'Brien* v. *Pittsfield,* 316 Mass. 283, 285-286 (1944); *Leonard* v. *School Comm. of Springfield,* 241 Mass. 325, 329-330 (1922); *Watson* v. *Cambridge,* 157 Mass. 561, 563 (1893); *Batchelder* v. *Salem,* 4 Cush. 599, 601-602 (1850).

While we recognize the holdings in our decisions cited above, we think reliance on them as precedent in the present case is misplaced. This is not an instance where the school committee and the teachers' association had attempted by a collective bargaining agreement to submit to arbitration the question of Korbut's or any other person's "entitlement" to be reappointed as Coordinator of

Language Arts. Rather, the committee and the association bound themselves through collective bargaining to *procedures* to be followed in the reappointment (or nonreappointment) of teachers to nontenured positions. The question submitted to the arbitrators was not whether Korbut should be reappointed, but rather whether or not there had been a violation of the agreed to procedures in failing to reappoint him. "Once a school committee agrees to follow certain procedures and to permit binding arbitration concerning its alleged failure to adhere to those practices, we see no public policy considerations which prevent full implementation of the terms of the agreement subject, however, to the retention in favor of the school committee of its nondelegable rights. Indeed, adherence to the evaluation procedures may be expected to provide information to the school committee which will permit it to make a fairer and more informed judgment concerning a teacher." *School Comm. of Danvers* v. *Tyman,* 372 Mass. 106, 114-115 (1977). See *School Comm. of W. Bridgewater* v. *West Bridgewater Teachers' Ass'n,* 372 Mass. 121, 124-125 (1977); *School Comm. of W. Springfield* v. *Korbut,* 4 Mass. App. Ct. 743, 750 (1976) (Goodman, J., dissenting).

Contrary to the reasoning of the Appeals Court, we do not believe that the arbitrators' selection of the remedy of reinstatement of Korbut for one school year intruded into the nondelegable rights of the school committee. We have recognized that flexibility should be available to arbitrators in making an award, *Teachers Local 66* v. *School Comm. of Boston,* 370 Mass. 455, 467-468 (1976), and that in certain circumstances reinstatement is an acceptable result of arbitration. *School Comm. of W. Bridgewater* v. *West Bridgewater Teachers' Ass'n,* 372 Mass. 121, 126 (1977). *Bradley* v. *School Comm. of Boston, ante,* 53, 59 (1977). Section 11 (*a*) (5) of G. L. c. 150C (inserted by St. 1959, c. 546, § 1, and applicable to the present case through the operation of G. L. c. 149, § 178K, as amended through St. 1972, c. 375) provides in part that "the fact that the award orders reinstatement of an employee with or without back pay or grants relief... [such

that a court could or would not grant] shall not be ground for vacating or refusing to confirm the award." In our opinions in *School Comm. of W. Bridgewater* v. *West Bridgewater Teachers' Ass'n, supra* at 127, and *School Comm. of Danvers* v. *Tyman,* 372 Mass. 106, 110-111 (1977), we noted a decision of the Court of Appeals of New York in *Board of Educ., Bellmore-Merrick Cent. High School Dist., Nassau County* v. *Bellmore-Merrick United Secondary Teachers, Inc.,* 39 N.Y.2d 167 (1976), which upheld an arbitrator's award of reinstatement without tenure of a probationary teacher so that an evaluation of the teacher could be made under proper procedures. (See also dissenting opinion, Goodman, J., *School Comm. of W. Springfield* v. *Korbut,* 4 Mass. App. Ct. 743, 750-751 [1976]; *Cohoes City School Dist.* v. *Cohoes Teachers Ass'n,* 40 N.Y.2d 774, 778 [1976]; *Legislative Conference on the City Univ. of N.Y.* v. *Board of Higher Educ. of the City of N.Y.,* 31 N.Y.2d 926, 928, aff'g 38 App. Div. 2d 478, 482 [1972]; Note, Public Sector Grievance Procedures, Due Process, and the Duty of Fair Representation, 89 Harv. L. Rev. 752, 757 n.28 [1976]). In the *West Bridgewater* case, *supra* at 127, we expressed our agreement with the *Bellmore-Merrick* decision, finding that the "reinstatement of a *nonsupervisory* teacher who had been treated unfairly because of the breakdown of required teacher evaluation procedures would not impinge on a school committee's nondelegable prerogatives" (emphasis added). Similarly in this case, which involves a vacancy in a nontenured supervisory position which has not been abolished, we think the arbitrators' remedy of reinstatement is appropriate.

Finally, it is to be noted that the ordering of the award of reinstatement where the school committee has failed to follow required procedures, differs from the situation where, by a school committee's failure to send timely notice of dismissal, or nonreappointment, a teacher may acquire "tenure" without an affirmative appointment by the school committee. See *Bonar* v. *Boston,* 369 Mass. 579, 582, 585 (1976); *School Comm. of Danvers* v. *Tyman,* 372 Mass. 106, 112-113 (1977). Korbut will not acquire statutory

"tenure" in the coordinator's position. Rather, the rein-statement order applies only to the 1977-1978 school year, at the end of which time, Korbut's continued service in such position is discretionary with the school committee, assuming all procedural requisites are met.