SCHOOL COMMITTEE OF BRAINTREE *vs.* GEORGE A.
RAYMOND & others.[1]

Suffolk.    January 6, 1976. — February 3, 1976.

Present: HENNESSEY, C.J., REARDON, BRAUCHER, KAPLAN, & WILKINS, JJ.

*Braintree.    School and School Committee.    Arbitration.    Labor.
Contract,* Collective bargaining contract.    *Municipal Corpora-
tions,* Collective bargaining.

A decision by a school committee to abolish the position of director of
music was a matter of educational policy within the exclusive
managerial prerogative of the school committee under G. L. c. 71,
§ 37, and as such could not be delegated for determination by an
arbitrator pursuant to a collective bargaining agreement.    [689-
690]

An arbitrator appointed pursuant to a collective bargaining agree-
ment to determine the validity of a school committee's decision to
abolish a position, even though he could not order reinstatement
of the employee affected by loss of the position because the deci-
sion to abolish the position was within the exclusive authority of
the school committee under G. L. c. 71, § 37, had the authority
to find that the employee was entitled to recover for loss of com-
pensation under the terms of the collective bargaining agreement.
[690-691]

CIVIL ACTION commenced in the Superior Court on
April 17, 1975.

The case was heard by *Hallisey,* J.

The Supreme Judicial Court granted requests for direct
appellate review.

*Brian A. Riley (Charles M. Healey, III,* with him) for
the defendants.

*Henry G. Stewart* for the plaintiff.

BRAUCHER, J.    This case closely resembles *School
Comm. of Hanover* v. *Curry,* 3 Mass. App. Ct. 151

---

[1] Representatives of the Braintree Education Association, and the
association.

(1975);[a] affirmed by us this day. *Ante,* 683. The Braintree school committee (committee) unilaterally abolished the position of director of music, an arbitrator ordered the affected employee reinstated and made whole for losses of compensation, and the Superior Court vacated the arbitrator's award. We follow the *Hanover* case, holding that the collective bargaining agreement could not prevent the committee from abolishing the position pursuant to G. L. c. 71, § 37. We hold in addition that it makes no difference that the grievance arose after July 1, 1974, the effective date of G. L. c. 150E, inserted by St. 1973, c. 1078, § 2. But we uphold the award so far as it orders the employee made whole for losses of compensation. Cf. *Doherty* v. *School Comm. of Boston,* 363 Mass. 885 (1973). We therefore order a judgment modifying the award and confirming it as modified.

We summarize the facts admitted in the pleadings or set forth in the opinion of the arbitrator. The committee and the Braintree Education Association (association) entered into a collective bargaining agreement for the period from September 1, 1973, until August 31, 1975. The defendant Raymond filed a grievance under the agreement on July 23, 1974, complaining that the committee on July 22, 1974, had abolished the position of director of music, which he had held for approximately eight years. The committee had decided to consolidate the positions of director of music and director of art into a new position, director of fine arts. Raymond applied for the new position, but the committee appointed another applicant. Raymond was appointed to serve as a music teacher at a reduced salary.

In March, 1975, the arbitrator made an award that (1) the grievance was arbitrable, (2) the committee violated the agreement by unilaterally abolishing the position, and (3) Raymond was to be reinstated and made whole for all losses of compensation. Upon application of the com-

[a]325 N.E.2d 282 (1975).

mittee pursuant to G. L. c. 150C, § 11, the Superior Court entered judgment vacating the award. The association appealed, and we granted the applications of both the plaintiff and the defendants for direct appellate review.

The case differs from the *Hanover* case in two respects. First, the grievance arose after July 1, 1974, the effective date of St. 1973, c. 1078, §§ 1 and 2, repealing G. L. c. 149, §§ 178D, 178F-178N, and inserting G. L. c. 150E. Second, the grievance and the reduction of the grievant's salary took place a year before the agreement expired. The first difference, we hold, is immaterial; the second is not.

1. *G. L. c. 150E.* Section 5 of St. 1973, c. 1078, provides, "The terms of any collective bargaining agreement in effect prior to the effective date of this act shall remain in full force and effect until the expiration date of said agreement." We read this to mean that the provisions of G. L. c. 150E are not to affect the law governing the validity of an agreement like the present one, which was in effect on July 1, 1974. Thus the present case is subject to the same law as the *Hanover* case, decided today.

Apart from § 5, moreover, we find no difference between the statute repealed and the statute inserted that is material to the present controversy. General Laws c. 149, § 178I, as amended by St. 1970, c. 340, contained the following provision: "In the event that any part or provision of any such [collective bargaining] agreement is in conflict with any law, ordinance or by-law, such law, ordinance or by-law shall prevail so long as such conflict remains . . . ." This language does not appear in G. L. c. 150E, § 7, which provides instead, "If a collective bargaining agreement reached by the employer and the exclusive representative contains a conflict between matters which are within the scope of negotiations pursuant to section six of this chapter and any municipal personnel ordinance, by-law, rule or regulation . . . [or

various other rules, regulations or statutes explicitly listed and not including any provisions of G. L. c. 71], the terms of the collective bargaining agreement shall prevail." See *Chief of Police of Westford* v. *Westford*, 365 Mass. 526, 528 n.1 (1974). We find here no legislative change in the rule of the *Hanover* case.

2. *Abolition of position.* Neither in this case nor in the *Hanover* case is there any claim that the committee's action was a pretense or device actuated by personal hostility rather than "the laudable abolition of an unnecessary position." *Sweeney* v. *School Comm. of Revere*, 249 Mass. 525, 530 (1924), quoting from *Garvey* v. *Lowell*, 199 Mass. 47, 50 (1908). Apart from the collective bargaining agreement, therefore, the committee's managerial powers under G. L. c. 71, § 37, included plenary power to abolish a supervisory position, even though the occupant of the position had statutory tenure. *Kaplan* v. *School Comm. of Melrose*, 363 Mass. 332, 336 (1973), and cases cited. That power could not be delegated. Cf. *Demers* v. *School Comm. of Worcester*, 329 Mass. 370, 373 (1952); *O'Brien* v. *Pittsfield*, 316 Mass. 283, 286 (1944). We have indicated that an employment contract could contain a provision as to compensation in such a contingency. *Libby* v. *Douglas*, 175 Mass. 128, 131 (1900) (school closing because of disease). Cf. *Kerrigan* v. *Boston*, 361 Mass. 24, 27 (1972) ("complete and exclusive" power to contract with teachers). But under the prevailing practice teachers have been elected only for one school year at a time. G. L. c. 71, § 41. See *Demers* v. *School Comm. of Worcester*, 329 Mass. 370, 372 (1952), and cases cited. We have held longer contracts for superintendents invalid because they would fetter decisions of successor school committees. *Sullivan* v. *School Comm. of Revere*, 348 Mass. 162, 165 (1964). *Minnich* v. *Nantucket*, 350 Mass. 784 (1966). Cf. *Murphy* v. *Cambridge*, 342 Mass. 339, 341 (1961).

In the *Hanover* case we decide that it is beyond the power of a school committee to bind itself not to abolish a supervisory position, where the abolition is not to take effect until after the collective bargaining agreement expires. It seems to us that the same considerations apply where the agreement purports to prevent abolition of a supervisory position for a period extending beyond the end of a school year. See *School Comm. of Hanover* v. *Curry,* 3 Mass. App. Ct. 151, 157-158 (1975).[b] We express no opinion as to the validity of a provision for a reasonable period of consultation before the position is abolished. See *Dunellen Bd. of Educ.* v. *Dunellen Educ. Ass'n,* 64 N.J. 17, 31-32 (1973). But we hold that under the principle of the *Hanover* case the arbitrator exceeded his powers when he ruled that the committee violated the agreement by unilaterally abolishing the position and when he ordered Raymond reinstated in the abolished position.

3. *Loss of compensation.* The question remains whether the arbitrator properly could order that the employee be made whole for loss of compensation. We have no doubt that the abolition of an employee's position, his transfer to a lesser position, and reduction of his salary involved his "wages, hours and other conditions of employment" within the meaning of G. L. c. 149, § 178I, as appearing in St. 1965, c. 763, § 2. See *Kerrigan* v. *Boston,* 361 Mass. 24, 26-28 (1972). Cf. G. L. c. 150E, § 6. The collective bargaining agreement therefore could provide for such a contingency, for grievances arising under the provision, and for arbitration of disputes over the interpretation and application of the terms of the agreement. G. L. c. 149, § 178K, as amended by St. 1972, c. 375. Cf. *School Comm. of Cambridge* v. *LaChance,* 3 Mass. App. Ct. 710 (1975).[c]

---

[b] 325 N.E.2d 282-287 (1975).

[c] 323 N.E.2d 775 (1975).

The arbitrator has read the agreement as providing that an employee whose position is unilaterally abolished is to be made whole for loss of compensation suffered. That determination was within his powers, and it is separable from his unauthorized determination that the employee should be reinstated. Cf. *Doherty* v. *School Comm. of Boston*, 363 Mass. 885 (1973), where we affirmed a decree confirming an arbitrator's award as to compensation even though the arbitrator had exceeded his authority by ordering reinstatement. We note that school committees sometimes have reached the same result without compulsion. See, e.g., *Jantzen* v. *School Comm. of Chelmsford*, 332 Mass. 175, 176 (1955); *Boody* v. *School Comm. of Barnstable*, 276 Mass. 134, 136 (1931).

4. *Related issues.* We do not decide any question with respect to the mandatory or permissive scope of collective bargaining. "A marked distinction exists between a duty to engage in collective bargaining, and a freedom to agree to submit controversies, whether or not subject to mandatory bargaining, to arbitration." *Susquehanna Valley Cent. School Dist. at Conklin* v. *Susquehanna Valley Teachers' Ass'n*, 37 N.Y.2d 614, 617 (1975). Nor do we decide any question with respect to other provisions that might be made for the contingency that a supervisory position might be abolished, or any question with respect to other contingencies which might be brought about by exercise of a school committee's managerial powers.

5. *Disposition.* The judgment is reversed. Pursuant to G. L. c. 150C, § 12 (*a*) (2), the award is to be modified by striking out the provision that the committee violated the contract by unilaterally eliminating the position and the provision for reinstatement to the position. Judgment is to be entered confirming the award as so modified. G. L. c. 150C, § 12 (*b*).

*So ordered.*