School Committee of New Bedford *v.* New Bedford Educators Association.

SCHOOL COMMITTEE OF NEW BEDFORD *vs.* NEW BEDFORD
EDUCATORS ASSOCIATION.

Bristol. February 20, 1980. — May 30, 1980.

Present: ARMSTRONG, DREBEN, & KASS, JJ.

*School and School Committee*, Appointment of personnel. *Arbitration.*
*Contract*, Collective bargaining contract.

A claim that a school committee violated a provision in a collective bar-
gaining agreement with respect to the procedure for filling vacancies
by making an appointment to a vacant position in disregard of the cer-
tification, teaching, and degree requirements which it had posted and
that the grievance continued despite the fact that the committee subse-
quently posted and adhered to a revised list of qualifications for the
vacancy was a proper question for arbitration, not in excess of an arbi-
trator's authority under G. L. c. 150C, § 11(*a*)(3). [797-800] ARM-
STRONG, J., dissenting on the ground that the issue submitted to arbi-
tration was not whether the school committee had violated the agree-
ment but whether it was obliged to appoint the grievant to the vacant
position, a matter within the exclusive power of the committee under
G. L. c. 71, §§ 37 and 38.
An arbitrator appointed pursuant to a collective bargaining agreement
exceeded his authority under G. L. c. 150C, § 11(*a*)(3), in ordering
that a teacher be appointed to the next vacancy in the position of
guidance counselor, as a remedy for the school committee's violation
of the agreement in filling the position, and in ordering that the
teacher be paid the salary differential until such time as she would be
appointed to the position. [800-801]
Where an arbitrator properly found that a school committee had violated
the provisions of a collective bargaining agreement but exceeded his
authority in his award to the aggrieved teacher, the matter was to be
remanded to permit the arbitrator to fashion a proper remedy.
[801-802] ARMSTRONG, J., dissenting.

CIVIL ACTION commenced in the Superior Court on Au-
gust 30, 1976.

The case was heard by *Taveira, J.*

*Charles M. Healey, III*, for the defendant.

*Thomas F. Burke*, for the plaintiff, submitted a brief.

DREBEN, J.  This is an appeal by the New Bedford Educators Association (NBEA) from a judgment, pursuant to G. L. c. 150C, § 11(a)(3), vacating an arbitration award entered as a result of a grievance filed by Aurora Zola, alleging a failure by the plaintiff school committee to follow agreed upon procedures in filling a vacancy in the position of guidance counselor.  The award ordered the plaintiff to appoint Zola to the next vacancy, to pay her the salary differential[1] applicable to the position for the school years 1974-1975 and 1975-1976, and to continue to make such payments until such time as she is appointed.  A judge of the Superior Court vacated the award on the ground that the arbitrator exceeded his powers by rendering an award which required the school committee "to commit an act or engage in conduct prohibited by State law."  See G. L. c. 150C, § 11(a)(3).  Although we agree with the judge that the arbitrator exceeded his powers in ordering the appointment of Zola, we hold the grievance arbitrable and order the judgment modified to remand the matter to the arbitrator to fashion a lawful award.  Cf. *Boston Teachers Local 66* v. *School Comm. of Boston*, 370 Mass. 455, 468 (1976).

We summarize the relevant portions of the collective bargaining provisions and the facts set forth in the arbitrator's opinion.  Article XIII of the agreement required, inter alia, that "[a]ll vacancies in positions in which a salary differential is applicable . . . shall be posted in every school . . . clearly setting forth a description and the qualifications for the position."[2]  Article XII required that "[q]ualifications

---

[1] For the year 1973-1974 the differential was $400.

[2] Article XIII also provided, "The Committee agrees to give due weight to the professional background and attainment of all applicants, the length of time each has been in the school system and other relevant factors.  In filling such vacancies preference will be given to teachers already employed by the Committee."  As to this latter clause, see *Berkshire Hills Regional Sch. Dist. Comm.* v. *Berkshire Hills Educ. Assn.*, 375 Mass. 522, 528 n.6 (1978).

and criteria for selection of all personnel shall be published and adhered to except in case of emergency". The agreement also provided for a four-level grievance procedure,[3] the fourth level being binding arbitration.

The dispute arose in 1974 after the plaintiff posted a notice of a vacancy in the position of guidance counselor at the high school. The notice set forth requirements for the position. These requirements, which were the ones the school committee had used in the past, were:

> "1. Master's Degree with major in guidance or counseling.
> "2. Massachusetts certification as guidance counselor.
> "3. Minimum of three (3) years successful experience in classroom teaching.
> "4. Demonstrated skill in ability to relate positively with students, professional staff and administrators."

Zola, a tenured teacher, and three other persons applied. On December 9, 1974, Maria Smith, a black candidate, was chosen to fill the position. At the time of her appointment, Smith did not meet any of the first three requirements contained in the notice; she did not possess a master's degree with major in guidance or counseling; she did not yet have her Massachusetts certification as a guidance counselor; and she had had only slightly more than two years of classroom experience. Zola was the only one of the four applicants who met the degree, certification and teaching requirements. In fact, she had six years of classroom experience, and evidence was introduced to show that she possessed the skill and ability to "relate positively" with students and staff. There was no evidence to the contrary.

---

[3] As provided in Article XXVI A, "A grievance is a claim based upon an event or condition which affects the welfare and condition of employment of any employee or group of employees and the interpretation, meaning or application of any term of this [a]greement."

In April, 1975, Zola filed her grievance alleging violation of the contract by the school committee in appointing Maria Smith and in failing to appoint her. After a level two grievance hearing in June, 1975, the superintendent of schools determined that the committee, in making the appointment, had not complied with the qualifications as posted, and Maria Smith was removed from the position. Prior thereto, in the spring of 1975, Smith had obtained her Massachusetts certification, and during the year, acquired more classroom experience. In July, 1975, the committee posted a new notice listing requirements for the position. This notice eliminated the requirement of a master's degree with a major in guidance or counseling and substituted therefor as the first prerequisite: "Some counseling experience." The other three requirements contained in the September notice remained the same.

In the meantime, a second vacancy occurred in the position of guidance counselor, and the revised qualifications of July were reposted in August, 1975. Maria Smith reapplied and was reappointed in November, 1975, as guidance counselor. There is no indication that Zola applied for either the vacancy created by Smith's removal or the second vacancy.

Zola's grievance was submitted to arbitration in accordance with the collective bargaining agreement. The parties agreed upon the submission of the following issues: "Did the School Committee violate Article XIII of the Collective Bargaining Agreement by not appointing [Zola] to the position of Guidance Counselor? If so, what shall the remedy be?" After hearings, the arbitrator found, inter alia, that at the time of Smith's appointment, she did not possess three of the four posted qualifications. He concluded that the school committee had not complied with article XIII when it appointed Smith in December, 1974, in violation of its own notice. The arbitrator also found that once the notice was "posted containing the required qualifications, the Committee could not unilaterally in the middle of the road, so to speak, change them or tailor-make them" to justify its

selection of Smith. He awarded Zola an amount equal to the pay differential applicable to the position of guidance counselor for the years 1974-1975 and 1975-1976. In fashioning the remedy, he concluded that reimbursement would not make Zola whole, and required the plaintiff to appoint Zola to the next vacancy and to pay her the differential until such appointment. The arbitrator decided that although he had power to remove Smith, he would not do so because of the "obvious and manifest" needs of the high school to have a black guidance counselor and the fact that NBEA did not wish to have Smith removed.

NBEA in appealing the vacating of the award argues that the judge was wrong in ruling that the arbitrator had exceeded his powers.

1. *Arbitrability of grievance.* We must first determine whether a proper question, not in excess of the arbitrator's authority under G. L. c. 150C, § 11(*a*)(3), was submitted to arbitration. The school committe argues that the issue before the arbitrator is Zola's initial "entitlement" to the position of guidance counselor, a question it claims is nonarbitrable because it is one statutorily reserved to the school committee under G. L. c. 71, §§ 37 and 38. While we concur that the appointment of Zola to the position of guidance counselor is not a proper subject of arbitration, see part 2 *infra*, the issue as posed by the school committee ignores entirely the question whether the school committee failed to follow the posting provisions for filling vacancies it had agreed upon in the collective bargaining agreement. See *Dennis Yarmouth Regional Sch. Comm.* v. *Dennis Teachers Assn.*, 372 Mass. 116, 118-119, 120 (1977). The latter question is one which is amenable to arbitration. While a school committee may not surrender its authority to make certain nondelegable managerial decisions, such as tenure, it may nevertheless "bind itself to follow certain procedures precedent to the making of any such decision," and it may "permit arbitration of a claim that it has failed to follow those procedures." *School Comm. of Danvers* v. *Tyman*, 372 Mass. 106, 113-114 (1977). *School Comm. of West Bridge-*

*water* v. *West Bridgewater Teachers' Assn.*, 372 Mass. 121, 122-123 (1977). The meaning of the agreement and whether a grievance exists, or continues, are also questions for the arbitrator. *School Comm. of Danvers* v. *Tyman*, 372 Mass. at 115. See note 3, *supra*.

The questions submitted to arbitration in *School Comm. of West Springfield* v. *Korbut*, 373 Mass. 788, 790-791 (1977), were almost identical in form[4] to the ones submitted here. In that case, the Supreme Judicial Court stated, "This is not an instance where the school committee and the teachers' association had attempted by a collective bargaining agreement to submit to arbitration the question of Korbut's or any other person's 'entitlement' to be reappointed as Coordinator . . . . Rather, the committee and the association bound themselves through collective bargaining to *procedures* to be followed in the reappointment (or nonreappointment of teachers . . . . The question submitted to the arbitrators was not whether Korbut should be reappointed, but whether or not there had been a violation of the agreed to procedures in failing to reappoint him." (Emphasis original.) *Id.* at 795-796. Similarly here, the school committee did not by agreement bind itself beyond what is permitted under State law. It did not delegate or submit to arbitration the right to make appointments. On the contrary, the collective bargaining agreement left such decisions to the discretion of the school committee. See note 2, *supra*. What the school committee agreed to do was to post qualifications prior to filling vacancies and not to ignore those qualifications in making appointments. Whether such posting provisions are deemed procedural or substantive is not significant. What is important is that the provisions do not impermissibly limit the committee's discretion.

We conclude that it would be error, in determining the question of arbitrability, to focus solely on the question whether the appointment itself is a proper subject of ar-

---

[4] In *Korbut* the questions, as stated by the Supreme Judicial Court were: "(1) whether the school committee had violated the collective bargaining agreement in failing to reappoint Korbut, and (2) if so, what the appropriate remedy should be." *Id.* at 790-791.

bitration and give no consideration to the question whether the failure by the school committee to follow its own posted qualifications was arbitrable. See *Dennis Yarmouth Regional Sch. Comm.*, 372 Mass. at 118-119. The Supreme Judicial Court has said that arbitration should not be denied "[u]nless there is positive assurance that an arbitration clause is not susceptible to an interpretation that covers the asserted dispute, or unless no lawful relief conceivably can be awarded." *School Comm. of Danvers* v. *Tyman*, 372 Mass. at 113. Issues should be analyzed so that arbitrable matters within the scope of the submission are not excluded from the arbitration process even if related to matters which for reasons of public policy or otherwise are not amenable to arbitration or which may be subject to limited remedial action. See *Dennis Yarmouth Sch. Comm.* v. *Dennis Teachers Assn.*, 372 Mass. at 120-121. Accordingly, as in *Korbut*, we hold that the issue deemed submitted to arbitration is not whether Zola should be appointed, but rather whether the school committee failed to adhere to the provisions it had agreed upon in appointing a guidance counselor.

The arbitrator decided that issue and determined that the school committee had violated those provisions when it appointed Smith to the position of guidance counselor in 1974, in disregard of the certification, teaching and degree requirements which it had posted. He also decided that the grievance continued despite the posting of revised qualifications in July and August. These decisions, including his ruling that the committee could not in midstream "change . . . or tailor-make" the qualifications to justify Smith's appointment, were not in excess of his powers. See *School Comm. of Cambridge* v. *LaChance*, 3 Mass. App. Ct. 710 (1975). They are final and are not subject to review. *School Comm. of Danvers* v. *Tyman*, 372 Mass. at 115. *School Comm. of Boston* v. *Boston Teachers Local 66*, 378 Mass. 65, 69 (1979). Thus, it is not appropriate for a court to consider the school committee's contention that the 1975 posting of qualifications rendered Zola's 1974 grievance moot. As we have stated, the decision as to whether the

grievance continued or whether the July and August reposting extinguished it was one for the arbitrator (*School Comm. of Danvers* v. *Tyman*, 372 Mass. at 115; *Wachusett Regional Dist. Sch. Comm.* v. *Wachusett Regional Teachers Assn.*, 6 Mass. App. Ct. 851 [1978]) and not for the court. *School Comm of Southbridge* v. *Brown*, 375 Mass. 502, 506 (1978). The Superior Court could not have vacated the award on the ground that the arbitrator had made "an error of law or fact" in his consideration of these questions. *Trustees of the Boston & Me. Corp.* v. *Massachusetts Bay Transp. Authy.*, 363 Mass. 386, 392 (1973). *Korbut*, 373 Mass. at 792-793.

2. *Appointment of Zola.* We next determine whether the arbitrator intruded into the school committee's exclusive domain by fashioning a remedy which included the appointment of Zola to the next vacancy in the position of guidance counselor at the high school. See *School Comm. of Danvers* v. *Tyman*, 372 Mass. at 114; *School Comm. of Southbridge* v. *Brown*, 375 Mass. at 506; *School Comm. of Boston* v. *Boston Teachers Local 66*, 378 Mass. at 69. What was here mandated was an initial appointment to a position requiring professional skills as well as certification under G. L. c. 71, § 38G. The order on its face carried no limit of time,[5] and unlike the order of reinstatement in *Korbut*, 373 Mass. at 791, 797, or the order approved in *School Comm. of West Bridgewater* v. *West Bridgewater Teachers' Assn.*, 372 Mass. at 127, was not for a short period in which to allow the school committee to make a proper evaluation. We think the order of appointment is beyond the arbitrator's authority and impinges on nondelegable matters of educational policy committed to the school committee. The Supreme Judicial Court has held that an arbitrator may not force specific appointments, such as principals or teachers,

---

[5] In addition, it appears in the record that a vacancy in the position of guidance counselor only occurs when a guidance counselor leaves or retires, or when a new position is created. Thus, even if the appointment is not a tenured one, compare *Korbut*, 373 Mass. at 797, it can be assumed that the appointment is not one of short-term or limited duration.

*Berkshire Hills Regional Sch. Dist. Comm.* v. *Berkshire Hills Educ. Assn.,* 375 Mass. 522, 526-527 (1978); that he may not order tenure, *School Comm. of Danvers* v. *Tyman,* 372 Mass. at 114; *School Comm. of West Bridgewater* v. *West Bridgewater Teachers' Assn.,* 372 Mass. at 126-127; and that he may not prevent permanent abolition of a supervisory position, *School Comm. of Braintree* v. *Raymond,* 369 Mass. 686, 690 (1976). The court has also in dictum indicated that an arbitrator may not require a change in the "duties or rank of a teacher entrusted with special duties of management or direction." *Korbut,* 373 Mass. at 795. Compare *Bradley* v. *School Comm. of Boston,* 373 Mass. 53, 59 (1977). In our view, the appointment of a guidance counselor without limit of time falls within the ambit of these cases as "the ingredient of educational policy . . . is so comparatively heavy" in the decision that it cannot be ordered by the arbitrator. See *School Comm. of Boston* v. *Boston Teachers Local 66,* 372 Mass. 605, 614 (1977); *School Comm. of Boston* v. *Boston Teachers Local 66,* 378 Mass. at 71.

3. *Compensation.* As noted earlier, the arbitrator awarded Zola the pay differential applicable to the position of guidance counselor for the school years 1974-1975 and 1975-1976, a period prior to the time of his decision. In addition, as to the future, he awarded Zola the pay differential until such time as she would be appointed to the position of guidance counselor. His award was consistent with the view, rejected by us, that Zola was entitled to be appointed, and the purpose of the award was to make her whole. See, *e.g., School Comm. of Braintree* v. *Raymond,* 369 Mass. at 691.

In this case, we consider the award of future compensation which was to continue for the full period of nonappointment an invalid intrusion into the area statutorily reserved to the school committee. We recognize that the arbitrator's order of compensation is "separable from his unauthorized determination" that Zola be appointed. See *School Comm. of Braintree* v. *Raymond,* 369 Mass. at 691.

We also recognize that under G. L. c. 150C, § 11(*a*)(5), the fact that the relief is such "that it could not . . . or would not be granted by a court of law or equity shall not be ground for vacating or refusing to confirm the award." See *Lawrence* v. *Falzarano,* 380 Mass. 18, 27-29 (1980). However, the compensation awarded here is tantamount to an order requiring Zola's appointment. The school committee would have no real alternative if the award were permitted to stand. The payments to Zola would continue relentlessly until the committee capitulated. One need only note the financial plight of cities such as New Bedford and the pressures to lower property taxes to recognize the illusory distinction between such an award and a direct order of appointment. While the school committee must be encouraged to follow the contractual posting requirements and the grievant's injury should be redressed, an arbitration award cannot in the guise of compensation accomplish indirectly exactly what a direct order may not do. It cannot "supersede the discretion legislatively vested" in the school committee. *Doherty* v. *School Comm. of Boston,* 363 Mass. 885 (1973). *Lawrence* v. *Falzarano,* 380 Mass. at 28.

4. *Disposition.* As we have held both the order of appointment and the award of compensation for an indefinite future period invalid, the matter must be remanded to the arbitrator to fashion such a remedy as he considers appropriate but which must fall "short of intruding into the school committee's exclusive domain." *School Comm. of Danvers* v. *Tyman,* 372 Mass. at 114. While he cannot order Zola's permanent appointment, the arbitrator may require that Zola's application be considered in accordance with the practices set forth in the collective bargaining agreement. *Id. Bradley* v. *School Comm. of Boston,* 373 Mass. at 59. He may also, insofar as he deems practicable, set other conditions to insure that Zola's application will be "appraised in good faith and on equal terms with all others." *School Comm. of Southbridge* v. *Brown,* 375 Mass. at 506. We do not suggest that the arbitrator may

determine the current qualifications for appointment of a guidance counselor; this matter must rest in the discretion of the school committee as long as such qualifications are not "tailor-made" against Zola. Since some six years have passed since the time of the grievance, the arbitrator may find it necessary to take additional evidence in order to take into account current conditions and the present collective bargaining agreement.

The arbitrator may also award damages. The award for a two-year period was within his discretion. See *School Comm. of Braintree* v. *Raymond*, 369 Mass. at 691. However, if he should determine that additional damages are appropriate, he must recognize that an award cannot be one which has the effect of compelling appointment. Arbitration may not award relief which offends public policy or is contrary to statute. Eager, The Arbitration Contract and Proceedings § 121.6 (1971). "However, within these bounds and within the limits of the agreement to submit to arbitration, arbitrators have broad authority to establish a balance between the parties." *Lawrence* v. *Falzarano*, 380 Mass. at 28.

Accordingly, the judgment is reversed, and the case is remanded to the Superior Court to enter a new judgment which vacates paragraphs 1 and 3 of the award and orders the matter remanded to the arbitrator for the determination of an appropriate remedy.

*So ordered.*

ARMSTRONG, J. (dissenting in part). I am wholly in accord with the court's holding that an initial appointment to a teaching position falls within the ambit of a school committee's nondelegable authority over educational policy conferred by G. L. c. 71, §§ 37 and 38. That holding is consistent with recent decisions defining a school committee's nondelegable prerogative to include appointments to principalships and other management positions, *Berkshire Hills*

*Regional Sch. Dist. Comm.* v. *Berkshire Hills Education Assn.,* 375 Mass. 522, 525-528 (1978), and renewals of teachers' contracts where renewal will confer tenure, *School Comm. of Danvers* v. *Tyman,* 372 Mass. 106, 111-113 (1977). A contrary holding would be inconsistent with the rationale of *Davis* v. *School Comm. of Somerville,* 307 Mass. 354, 362 (1940), which held that "[b]y long established legislative policy school committees are given general management of the public schools including the election and the dismissal of teachers . . . . The success of a school system depends largely on the character and ability of the teachers. Unless a school committee has authority to employ and discharge teachers it would be difficult to perform properly its duty of managing a school system."

My disagreement with the majority's disposition of this case stems from my different interpretation of the question that was submitted to arbitration. Zola was the only applicant for the position of guidance counselor who possessed all the posted qualifications and understandably felt aggrieved when her application was passed over in favor of one (Smith) who did not possess all the posted qualifications. Zola invoked the grievance procedure, seeking to be appointed herself. Her claim seems to have had two aspects: first, that Smith's appointment violated the provision of the collective bargaining agreement requiring that qualifications be posted and that they be adhered to in hiring; and, second, that Zola, as the only applicant possessing all the posted qualifications, should have received the appointment. The first aspect was settled at the second stage of the grievance procedure, when the superintendent ruled that posted qualifications had to be adhered to. The school committee abided by that determination, revoking Smith's appointment and beginning the appointive process anew. At the superintendent's level of the grievance procedure the first, or procedural, aspect of Zola's contention was settled and dropped out of the case.

The question Zola took on to arbitration (the fourth stage of the grievance procedure) was her separate and distinct

contention that she should have received the appointment herself. It is hard to see how the questions submitted to arbitration could have put it more unambiguously: "Did the School Committee violate Article XIII of the Collective Bargaining Agreement *by not appointing the Grievant* to the position of Guidance Counselor? If so, what should the remedy be?" (emphasis supplied). The arbitrator understood the first question in its obvious sense and ruled that the school committee had, as charged, violated the agreement *by not appointing Zola to the position.* Without overstepping in any respect the precise boundaries of the matter that had been committed to him for decision, he ordered that Zola be offered an appointment and that she be paid damages in the amount of the salary differential from the date of Smith's initial (but revoked) appointment to the date that the school committee should comply with the order to offer an appointment to Zola. Thus, I cannot acquiesce in the majority's view that the issue submitted to arbitration was "not whether Zola should be appointed, but rather whether the school committee failed to adhere to the provisions it had agreed upon in appointing a guidance counselor." *Supra* at 799.[1]

In my opinion the trial judge acted correctly in vacating the award in its entirety on the ground that the matter put

---

[1] The majority seem to analogize the question submitted to arbitration in this case to the one submitted in *School Comm. of West Springfield* v. *Korbut,* 373 Mass. 788 (1977), on the basis of a semantic similarity between the questions. Functionally the cases are very dissimilar. In *Korbut* a "coordinator of language arts" was demoted from that position without compliance with the notice and hearing requirements of the collective bargaining agreement. It was clear that the alleged breaches of the agreement concerned these procedural omissions and that the grievant's claim that the committee violated the agreement "in failing to reappoint Korbut" meant, in context, *in the process* of failing to reappoint Korbut. Here there is no such ambiguity: the school committee is alleged to have violated the agreement "by" failing to appoint Zola. A secondary level of distinction is that the *Korbut* case dealt with retention of a position already held. This case, like the *Berkshire Hills* case, deals with an initial appointment to a vacant teaching position, a function which I, like the majority, think belongs nondelegably to the school committee.

to the arbitrator was one that the school committee could not lawfully agree to delegate. The question submitted to arbitration and decided by the arbitrator was whether the school committee was obliged to appoint Zola to a guidance counselor position. Unless we are to distinguish between appointments to principalships and appointments to other academic positions — a distinction which, I agree with the majority, must be rejected — the *Berkshire Hills* case, which held the ultimate power of appointment to be non-delegable, controls this one and supports the trial judge's decision. It makes no difference whether Zola's claim was based on a theory of entitlement under the terms of the collective bargaining agreement[2] or on a theory that her appointment could be ordered by the arbitrator as a discretionary remedy for the school committee's failure to adhere to the posted qualifications procedures. The reason for the relief sought is beside the point; the problem is lack of power. The power of appointment is committed by G. L. c. 71, §§ 37 and 38, exclusively to the school committee: the school committee may not irrevocably delegate to an arbitrator the decision whether one should be appointed to an academic position, and it may not be made to abide by the outcome of such a delegation if it does. See *School Comm. of Danvers* v. *Tyman*, 372 Mass. at 113 n.5; *Dennis Yarmouth Regional Sch. Comm.* v. *Dennis Teachers Assn.*, 372 Mass. 116, 120 (1977). The defect was not in what the arbitrator did but rather was in the nonarbitrability of the claim submitted to him for decision. It is immaterial, in such a case, whether the matter comes to court in the form of a motion under G. L. c. 150C, § 2(*b*), to stay arbitration

---

[2] The arbitration took place more than a year before publication of either of the appellate decisions in the *Berkshire Hills* case, suggesting that Zola (like Gray in the *Berkshire Hills* case, who relied on a substantially identical provision) may have read Article XIII as opening the school committee's prerogative with respect to academic appointments to arbitral control. The decision of this court was issued on November 17, 1977, 5 Mass. App. Ct. 686 (1977), and the decision of the Supreme Judicial Court (cited in the text) on June 26, 1978. The arbitration award ordering that Zola be appointed was issued on August 3, 1976.

(see the *Dennis Yarmouth* case, *supra*, at 119; the *Berkshire Hills* case, *supra* at 530,) or in the form of a motion to vacate an arbitration award previously rendered: the question for decision is identical in both cases. See *School Comm. of Agawam* v. *Agawam Educ. Assn.*, 371 Mass. 845, 847 (1977).[3]

The majority's strained interpretation of the claim inevitably permeates their treatment of the award. On the one hand they hold that the questions submitted to the arbitrator for decision were arbitrable; on the other they vacate the first paragraph of his award, which was simply his affirmative answer to the first of the two questions submitted, in haec verba. How can it be that the question put to the arbitrator lay within his jurisdiction, but a simple affirmative answer to it exceeded his jurisdiction? Similarly, the arbitrator's award of compensatory damages to Zola for the delay in her appointment is vacated on the ground that she is not entitled to appointment, but the case is ordered returned to the arbitrator for a redetermination of damages based on some other, unspecified theory. Is it not basic, however, that the legal sufficiency of the arbitrator's theory of damages is not before us for review, but only the question of his jurisdiction? *Greene* v. *Mari & Sons Flooring Co.*, 362 Mass. 560, 563 (1972). *School Comm. of Braintree* v. *Raymond*, 369 Mass. 686, 691 (1976).

It seems to me that the majority also err in suggesting that it lay within the competence of the arbitrator to bar the

---

[3] Our focus must, of course, be on the question actually framed for submission to arbitration, not on the arbitrability of other questions which could have been framed arising out of the underlying facts. It is the arbitrator who will determine the facts; the issue of arbitrability of the claim may be determined by a court on a motion to stay arbitration under G. L. c. 150C, § 2(*b*), before there has been any determination of facts by an arbitrator. The principle on which the court relies, that arbitration should not be stayed "unless no lawful relief conceivably can be awarded by the arbitrator" (*School Comm. of Danvers* v. *Tynan*, 372 Mass. at 113), applies to cases where the claim submitted for decision is arguably within the scope of what the parties contracted to submit (or, as in this case, were permitted by law to submit) to arbitration. It has no application here, where the question is unambiguous and squarely within the nondelegable area.

school committee from amending the technical qualifications for the position of guidance counselor when it reposted the position. That was not, of course, the question submitted to arbitration; but if it were, I would hold that the fixing of qualifications for appointments to teaching positions is so integral to the appointment process that a provision in a collective bargaining agreement purporting to limit the committee's power in that respect would be unenforceable as an impermissible conflict with the discretion over academic appointments reposed in the school committee by G. L. c. 71, §§ 37 and 38.[4] No better example of the conflict could be put than the case at bar. Zola was the only person interested in the guidance counselor position who met the formal qualifications as originally posted. The arbitrator, by ruling that the committee could not appoint one who did not meet the posted qualifications and could not change the posted qualifications, in effect limited the field of applications to Zola's. Neither the collective bargaining agreement nor the arbitrator could so confine the discretion of the school committee, which may have good reason for feeling that Zola would not be suitable in the presumably sensitive position of guidance counselor. Whatever those reasons, they are under the statutory scheme unreviewable by an arbitrator; like the power of appointment itself, the determination of qualifications for appointment is committed by §§ 37 and 38 to the exclusive discretion of the school committee.

As the reference was beyond the scope of what the school committee could lawfully agree to submit to arbitration, I think the trial judge was right in holding that the arbitration award must be vacated in its entirety, and I find no basis for resubmission to the arbitrator for reassessment of damages. I would therefore affirm the judgment.

---

[4] The "tailoring" of the qualifications to enable the school committee to appoint Smith was based on a judgment by the school committee that an important educational purpose would be served by adding a black guidance counselor to the high school faculty, a judgment with which the New Bedford Educators Association and, at a latter stage, the arbitrator, indicated they agreed in principle. Smith's appointment, however, could not have been made except by revising the posted qualifications. The record does not suggest that this was other than an educational policy judgment.