SCHOOL COMMITTEE OF LYNNFIELD vs. ARNOLD S.
TRACHTMAN & others.[1]

Essex.    January 18, 1980. — March 5, 1981.

Present: ARMSTRONG, ROSE, & KASS, JJ.

*School and School Committee,* Arbitration, Collective bargaining.  *Arbitration,* School committee.  *Contract,* Collective bargaining contract.

A school committee's reduction of a tenured teacher's teaching load by
thirty percent as part of a decision to eliminate 5.6 teaching positions
from its budget constituted an exercise of its nondelegable, managerial
powers.  [526-529]

Although an arbitrator exceeded the scope of his authority in determining
that a school committee had violated the terms of a collective bargaining agreement when it unilaterally reduced a tenured teacher's teaching load by thirty percent, his award to the teacher of the difference
between his salary as a part-time teacher and the salary he would have
received as a full-time teacher was proper where there was no provision in the agreement for prorated salaries for part-time work.
[529-530]

CIVIL ACTION commenced in the Superior Court Department on September 12, 1978.

The case was heard by *Bennett, J.*

*Henry G. Stewart* for the plaintiff.

*Charles M. Healey, III,* for the defendants.

ROSE, J.    This appeal presents the question whether a tenured art teacher, the defendant Arnold S. Trachtman, was
entitled to arbitration of his grievance concerning a school
committee's decision to reduce Trachtman's teaching responsibilities and salary for the 1977-1978 school year.  The

---

[1] The other defendants are the Lynnfield Teachers Association (association), which is the collective bargaining representative of teachers and
other professional employees in the Lynnfield school system, and six
named officers and representatives of the defendant association.

plaintiff school committee commenced proceedings in the Superior Court seeking to vacate an arbitrator's award in favor of the grievant on the ground that the arbitrator had exceeded his authority (G. L. c. 150C, § 11[a][3]), in ruling that the school committee's decision to partially eliminate Trachtman's position was prohibited by the collective bargaining agreement. The arbitrator awarded Trachtman compensation in the amount of $5,737. The judge confirmed the arbitrator's award, and the school committee appeals. We hold that the collective bargaining agreement could not prevent the committee from partially eliminating the teaching position. We uphold the award, however, in so far as it orders the employee to be made whole for the reduction in his salary for the 1977-1978 school year.

The facts, which we take from the arbitrator's decision and award, are as follows: The parties had entered into a collective bargaining agreement for the period September 1, 1975, to August 31, 1977. The agreement, by its terms, was self-renewing unless either party notified the other within a certain period before the expiration date. At a meeting on March 16, 1977, the Lynnfield School Committee voted to eliminate 5.6 teaching positions from its budget for the school year 1977-1978. As part of the reduction in staff, the committee reduced Trachtman's teaching responsibilities and salary by thirty percent for the 1977-1978 school year.[2] The reason for the committee's action was the steady decline in student enrollment in Trachtman's art history and studio classes during his seven years' employment in the Lynnfield school system.[3]

---

[2] The arbitrator found that although the minutes for the March 16, 1977, meeting did not reflect the committee's consideration of Trachtman's position as such, all parties concerned understood, on the basis of prior, informal conversations, that Trachtman's position was one of two full-time teaching positions which were reduced by thirty percent by the school committee. The other full-time teacher whose position was reduced by thirty percent for the 1977-1978 school year, resigned at the end of the 1976-1977 school year and did not file a grievance.

[3] During those seven years, evaluations of Trachtman's teaching performance were satisfactory, and there is no suggestion that his teaching load was reduced for disciplinary reasons.

On August 10, 1977, Trachtman signed a new contract for the 1977-1978 school year which provided for a thirty percent reduction in his salary and teaching responsibilities, but inserted a cover letter with the contract stating that he objected to the salary provisions therein. Trachtman lodged a formal grievance with the association on or about August 19, 1977, with regard to the reduction in his salary and teaching load. On August 26, 1977, the association submitted a formal grievance to the school committee on Trachtman's behalf under article III(C) of the collective bargaining agreement between the school committee and the association. The ensuing grievance proceedings led to arbitration. Trachtman continued to teach on a part-time basis for the 1977-1978 school year while his grievance was being processed.

1. *Arbitrability of grievance.* The arbitrator viewed the issues submitted for arbitration as "whether the [c]ommittee violated the contract's terms by reducing a teacher's responsibilities and salary from full-time to part-time unilaterally." In so doing, he noted that the association did not challenge the committee's authority to discharge teachers because of the lack of enrollment in certain subject areas; it argued, rather, that the committee's selection of one teacher for reduction in duties and salary contravened the salary provisions of the contract. The arbitrator concluded that the issues raised by Trachtman's grievance presented arbitrable claims under the parties' collective bargaining agreement.

On the merits of the grievance, the arbitrator concluded that the committee, although acting in good faith when it reduced Trachtman's position, had violated the collective bargaining agreement. He found that the teachers' salary schedule in the contract contained no provision for unilateral reduction of a full-time teacher to part-time status, and that neither Trachtman nor the association, his bargaining agent, had any reason to believe that the contract authorized anything other than full-time teaching duties and a full-time salary. Because the agreement did not provide for part-time salaries, the arbitrator awarded Trachtman

$5,737. That amount represented the difference between the wages actually received by Trachtman during the 1977-1978 school year and the amount to which he would have been entitled as a full-time teacher.[4]

The school committee filed an application to vacate the arbitration award pursuant to G. L. c. 150C, § 11(a)(3). After hearing, a judge of the Superior Court entered an order confirming the arbitrator's award, based on the following findings: that the school committee reduced Trachtman's work load and salary while he was a tenured teacher in the Lynnfield school system; that Trachtman's salary and teaching load, or wages and hours, were the subject of a collective bargaining agreement between the parties which provided that disputes regarding wages and hours would be subject to arbitration; that the reduction in Trachtman's salary was not a general reduction "across the board" of teachers in the same salary grade or category, but rather was a reduction only in Trachtman's salary and hours;[5] and that such reduction was not an exercise of a managerial prerogative on the part of the committee, but rather was a matter subject to the collective bargaining agreement and therefore a proper subject of arbitration.

We are of the opinion that the school committee's decision to reduce Trachtman's teaching load by thirty per cent as part of a decision to eliminate 5.6 teaching positions from its budget, constituted an exercise of its nondelegable, managerial powers. See G. L. c. 71, § 37. The exercise of those powers is not arbitrable under the principles stated in *School Comm. of Braintree* v. *Raymond*, 369 Mass. 686, 689-690 (1976), and *School Comm. of Hanover* v. *Curry*, 3

---

[4] Had Trachtman been employed on a full-time basis for the 1977-1978 school year, his salary under the parties' collective bargaining agreement would have been $19,124. He was, in fact, paid $13,387, a thirty percent reduction.

[5] No argument has been addressed to us on appeal that the grievant can recover for a reduction of salary in violation of G. L. c. 71. See *Kelley* v. *School Comm. of Watertown*, 330 Mass. 150, 154 (1953). See also *Mc-Cartin* v. *School Comm. of Lowell*, 322 Mass. 624, 628 (1948). See note 2, *supra*.

Mass. App. Ct. 151 (1975), *S.C.*, 369 Mass. 683, 685 (1976).
We hold, therefore, that the arbitrator exceeded the scope
of his authority (G. L. c. 150C, § 11[*a*][3]), when he ruled
that the committee had violated the parties' collective bar-
gaining agreement by unilaterally reducing Trachtman's
teaching responsibilities for the 1977-1978 school year.

The statute giving rise to the school committee's author-
ity, G. L. c. 71, § 37, has been construed broadly to reserve
general managerial powers in school committees over mat-
ters "predominantly within the realm of educational
policy." *School Comm. of Hanover* v. *Curry*, 3 Mass. App.
Ct. 151, 156-157 (1975), *S.C.*, 369 Mass. 683, 685 (1976).
Those powers include the power to change by a simple ma-
jority vote of the school committee the duties of tenured
teachers and to assign them to new duties (*McDevitt* v.
*School Comm. of Malden*, 298 Mass. 213, 214 [1937]; see
*Kelley* v. *School Comm. of Watertown*, 330 Mass. 150, 152
[1953], and cases cited), and the "plenary power to change
the duties or rank of a teacher entrusted with special duties
of management or direction." *School Comm. of West
Springfield* v. *Korbut*, 373 Mass. 788, 795 (1977). A "ma-
jority of a school committee, acting in good faith, [also has
the power] to abolish a position held by a tenured teacher
for reasons of economy, system reorganization or educa-
tional policy," *Nutter* v. *School Comm. of Lowell*, 5 Mass.
App. Ct. 77, 79-80 (1977), and cases cited, and to reduce
the responsibilities of a position, *Setterlund* v. *Groton-Dun-
stable Regional Sch. Comm.*, 382 Mass. 328, 331 (1981).
Such teachers, however, cannot be dismissed from the
teaching force ("dismissal" meaning "*any* reduction in the
extent of employment"), without compliance with the pro-
cedural provisions of G. L. c. 71, § 42.[6]  The power to par-

---

[6] General Laws c. 71, § 42, as amended through St. 1972, c. 464, § 2,
provides that a tenured teacher may not be dismissed except by a two-
thirds vote of the school committee and for reasons constituting "good
cause."  The statute also requires notice of the vote and, at the teacher's
request, a written account of the charges and a hearing.

tially eliminate a position, like the power to abolish a position or to reassign duties, "lie[s] within the school committee's 'zone of management prerogative over educational policy' which cannot be delegated to an arbitrator . . . ." *Blue Hills Regional Dist. Sch. Comm.* v. *Flight,* 10 Mass. App. Ct. 459, 465, further appellate review granted, 381 Mass. 782 (1980), quoting from *School Comm. of Boston* v. *Boston Teachers Local 66,* 378 Mass. 65, 72, and see 70-72 (1979). See also and compare *School Comm. of Danvers* v. *Tyman,* 372 Mass. 106, 111-112 (1977), and cases cited; *School Comm. of West Springfield* v. *Korbut,* 373 Mass. at 794-796; *Berkshire Hills Regional Sch. Dist. Comm.* v. *Berkshire Hills Educ. Assn.,* 375 Mass. 522, 525 (1978).

2. *Reduction in salary.* The remaining issue concerns the arbitrator's award of compensation. The arbitrator interpreted the agreement to require that Trachtman be compensated for the difference between what he received as a part-time teacher and what he would have received as a full-time teacher. The reduction of his salary involved his "wages, hours, and other terms and conditions of employment" within the meaning of c. 150E, § 2, inserted by St. 1973, c. 1078, § 2 (see *School Comm. of Braintree* v. *Raymond,* 369 Mass. 686, 690 [1976]), and is separable from the arbitrator's unauthorized determination that the collective bargaining agreement could prevent the committee from partially eliminating the teaching position. *Id.* at 691; *School Comm. of New Bedford* v. *New Bedford Educators Assn.,* 9 Mass. App. Ct. 793, 801 (1980); *Blue Hills Regional Dist. Sch. Comm.* v. *Flight,* 10 Mass. App. Ct. 459, 471 (1980).[7] The parties specifically asked the ar-

---

[7] This conclusion is consistent with *Setterlund* v. *Groton-Dunstable Regional Sch. Comm.,* 382 Mass. 328 (1981), where the court concluded that consistent with G. L. c. 150E, § 6, and G. L. c. 71, § 43, "a tenured teacher may have his salary reduced in only two situations: (1) if, as here, he is subject to a collective bargaining agreement, it may be reduced in accordance with the agreement; (2) if he is not subject to a collective bargaining agreement, he must individually consent to a reduction," *Id.* at

bitrator whether a unilateral reduction in Trachtman's salary violated the terms of the agreement, (compare *School Comm. of New Bedford* v. *New Bedford Educators Assn., supra* at 799-800), and the arbitrator concluded that it did. He found that the contract as a whole created the "unmistakable impression" that the bargain struck by the parties was predicated on full-time annual wages and that the parties did not contemplate the proration which had occurred in Trachtman's case. We shall not disturb his interpretation insofar as he made a money award to Trachtman on the basis of the contract. See *School Comm. of New Bedford* v. *New Bedford Educators Assoc., supra*; *School Comm. of West Springfield* v. *Korbut*, 373 Mass. 788 (1977).

3. *Disposition.* The judgment confirming the arbitration award is to be modified to provide only that the defendant Arnold S. Trachtman shall have damages in the amount of $5,737. G. L. c. 150C, § 12(*b*).

*So ordered.*

---

330, n.3. The court impliedly held that, notwithstanding the absence of G. L. c. 71, § 43, from the enumerated statutes in G. L. c. 150E, § 7(d), where the employees' collective bargaining agent has reached agreement with the employer for the payment of prorated salaries for part-time work, the mandate of § 43 that an employee individually consent to a reduction in pay for part-time work is not required. Similarly, the last sentence of G. L. c. 71, § 42, as amended through St. 1966, c. 185, § 2, which provides, "No teacher or superintendent who has been lawfully dismissed shall receive compensation for services rendered thereafter," is superseded when the collective bargaining agreement, as here, provides for compensation beyond the effective date of an employee's dismissal (dismissal being defined as it is in *Setterlund* as "'*any* reduction in the extent of employment.'" *Id.* at 331). We do not address the effect of the statute in the absence of a collective bargaining agreement. This result is consistent with the holdings in *School Comm. of Braintree* v. *Raymond*, 369 Mass. 686 (1976), and *Setterlund.*