SCHOOL COMMITTEE OF BOSTON & another[1] *vs.* BOSTON
TEACHERS UNION, LOCAL 66
(and three companion cases[2]).

Suffolk.    March 5, 1985. — June 20, 1985.

Present: HENNESSEY, C.J., WILKINS, ABRAMS, NOLAN, & LYNCH, JJ.

*School and School Committee*, Collective bargaining contract, Termination
of employment, Arbitration award. *Arbitration*, Authority of arbitrator,
Award.

On appeal from a judgment affirming an arbitrator's award of back pay and
benefits to 710 tenured teachers who had been laid off in violation of a
job security provision in a collective bargaining agreement between a
teachers' union and the School Committee of Boston, a provision which
had been held unenforceable in *Boston Teachers Local 66* v. *School
Committee of Boston*, 386 Mass. 197 (1982), it was held that the arbitrator
had exceeded his authority in awarding damages where there were no
uncommitted appropriated funds to satisfy the award. [235-237]

CIVIL ACTIONS commenced in the Superior Court Department
on May 7 and 8, 1981, respectively.

After the decision of this court reported in 386 Mass. 197
(1982), motions for entry of judgment were heard by *Thomas
R. Morse, Jr., J.*

CIVIL ACTIONS commenced in the Superior Court Department
on February 18, 1982, and July 8, 1983, respectively.

The cases were heard by *Thomas R. Morse, Jr., J.*

The Supreme Judicial Court granted a request for direct
appellate review.

*Philip Collins* for School Committee of Boston.

*James T. Grady* for Boston Teachers Union, Local 66.

[1] The city of Boston as intervener.

[2] All four cases are actions between the School Committee of Boston
(school committee) and the Boston Teachers Union, Local 66 (BTU), which
were filed at various times since the dispute between the parties arose in

*David J. Hickey*, Special Assistant Corporation Counsel, for the intervener, submitted a brief.

HENNESSEY, C.J. The School Committee of Boston (school committee) has appealed from judgments of the Superior Court which affirmed an arbitration award of damages to 710 tenured teachers who were laid off by the school committee prior to commencement of the 1981-1982 school year. Because there were no uncommitted, appropriated funds available to the school committee to employ the teachers during that year, we conclude that the arbitrator acted beyond his authority, see G. L. c. 150C, § 11 (*a*) (3) (1984 ed.), and thus reverse the judgments below.

The facts which gave rise to this litigation are fully set forth in an earlier review of the same collective bargaining provision before us now. *Boston Teachers Local 66* v. *School Comm. of Boston*, 386 Mass. 197, 200-202 (1982) (*BTU I*). In short, on August 29, 1980, the school committee approved a three-year collective bargaining agreement with the Boston Teachers Union, Local 66 (BTU), subject to the appropriation of funds by the city council and the mayor. This agreement contained a job security provision, which stated: "Effective September 1, 1980, through June 30, 1982, any teacher or nurse with tenure or permanently appointed shall continue to be employed."

According to the affidavit filed by the superintendent of schools, the school committee voted, in August, 1981, to lay

May, 1981. The first case, filed in 1981, is an action for declaratory and injunctive relief brought by the BTU to enjoin the school committee from dismissing certain tenured teachers, on the ground that such dismissal would be in violation of statutory law and the multiyear collective bargaining agreement at issue here. The city of Boston was allowed to intervene in this action. The second case, also filed in 1981, is an action for declaratory relief brought by the school committee against the BTU, the city of Boston, the mayor of Boston, and the Boston city council, to determine the obligations of the parties with respect to the funding and implementation of the same agreement as that at issue in the first case. The third and fourth cases, filed in 1982 and 1983, were brought by the school committee against the BTU, and sought orders vacating the arbitration award of back pay and damages for breach of that agreement. The city of Boston was allowed to intervene in both of these cases.

off 710 tenured teachers because of the mayor's refusal to provide the necessary additional funding for fiscal year 1981-1982.[3] See *BTU I, supra* at 201. According to the same affidavit, the decision to lay off these tenured teachers was "based upon [the school committee's] determination of the programs to be offered and the size of the teacher workforce necessary to provide those programs, all in light of available funds." The superintendent further stated that "[i]n September, 1981 and throughout Fiscal Year 1982 there were no uncommitted, appropriated funds available for the employment of the 710 laid off teachers."

The BTU filed suit for an injunction against the layoffs, and for a declaration of its rights under the two-year job security clause contained in the collective bargaining agreement. That case, and related cases, ultimately reached this court. In *BTU I, supra* at 213, we held that the job security clause, to the extent that it purported to bind the school committee for periods "spanning more than one fiscal year," was an impermissible intrusion into the school committee's "exclusive managerial prerogative." *Id.* at 212. See G. L. c. 71, § 37 (1984 ed.). Accordingly, we held that any rights to job security granted for the fiscal year 1981-1982, in a contract signed in August, 1980, and effective September 1, 1980, were unenforceable. *Id.* at 213.

While the appeal in *BTU I* was pending, the BTU and the school committee were involved in an arbitration proceeding over these layoffs of tenured personnel. The arbitrator, on June 6, 1983, awarded back pay and benefits for breach of the job security provision for the 1981-1982 fiscal year, despite the prior holding of this court in *BTU I* that this provision was unenforceable beyond the 1980-1981 fiscal year. The school committee then filed a complaint in the Superior Court to vacate the arbitrator's award. On April 3, 1984, the award was upheld, and this court subsequently allowed the school committee's application for direct appellate review.

---

[3] One hundred ninety-nine of these teachers were later recalled to employment.

395 Mass. 232                                                    235

School Committee of Boston *v.* Boston Teachers Union, Local 66.

The BTU argues that our holding in *BTU I*, that the job security provision was unenforceable for fiscal year 1981-1982 placed limits only on the arbitrator's authority to award specific performance, and not on his authority to award damages.[4] The BTU cites two opinions of this court in support of its argument. In *School Comm. of Braintree* v. *Raymond*, 369 Mass. 686 (1976), we held that a decision to abolish the position of director of music was within the exclusive managerial prerogative of the school committee, and thus could not be delegated to an arbitrator pursuant to the provisions of a collective bargaining agreement. *Id.* at 689-690. Nonetheless, despite the fact that the arbitrator had exceeded his powers in ordering reinstatement of the director of music, we upheld the arbitrator's award of damages for lost compensation. *Id.* at 691. We noted that such an award was "separable from [the arbitrator's] unauthorized determination that the employee should be reinstated." *Id.* Similarly, in *School Comm. of Lynnfield* v. *Trachtman*, 384 Mass. 813 (1981), we concluded that an arbitrator had exceeded his authority in determining that a school committee could not, under the terms of a collective bargaining agreement, partially eliminate a staff position. *Id.* at n.2. Nonetheless, following *School Comm. of Braintree* v. *Raymond, supra,* we approved the arbitrator's award of damages for the teacher who had been demoted from full time to part time.

We conclude that the principle set forth in those two cases, that an award of damages "is separable" from an arbitrator's mistaken conclusion that a particular decision by a school committee is arbitrable, is wholly inapplicable here. Neither *School Comm. of Braintree* v. *Raymond, supra,* nor *School Comm. of Lynnfield* v. *Trachtman, supra,* involves the fundamental issue presented by this appeal: whether an arbitrator has acted beyond his authority in awarding damages for breach of a provision of a collective bargaining agreement, where there are no uncommitted, appropriated funds available to the school committee to implement that provision. In neither case was

---

[4] In fact, the BTU vigorously pressed this argument in a petition for rehearing filed after our decision in *BTU I*. The petition was denied.

any claim made that there were no funds from which the school committee could satisfy the award for lost compensation. We conclude, in these circumstances, where no uncommitted, appropriated funds are available, that the arbitrator has exceeded his authority, and thus we reverse the judgments below.

In *Boston Teachers Local 66* v. *School Comm. of Boston*, 370 Mass. 455 (1976), we held that clauses providing for the hiring of substitute teachers were properly included in a collective bargaining agreement, and that such clauses were enforceable "where there has been no change in educational policy *and funds are available to implement the terms of the agreement*" (emphasis added). *Id*. at 464. We further held that an arbitrator's award of damages for breach of such clauses would be upheld "only if appropriated, uncommitted funds in the school budget established according to law were available for the hiring of substitute teachers at the times the school committee refused to hire substitute teachers." *Id*. at 464-465. In short, an arbitrator acts in excess of his authority if damages are awarded for the breach of a provision in a collective bargaining agreement when, at the time of the breach, no funds had been appropriated to implement that provision.[5]

We recently recognized the continued vitality of this doctrine in *BTU I*, 386 Mass. at 211-212. In that case, in holding that the job security clause was unenforceable for any period exceeding one fiscal year, we concluded that G. L. c. 71, § 42,[6] indicates a legislative intent to reserve decisions about the abolition of teaching positions because of declining pupil en-

---

[5] As an exception to this principle, this court has "upheld the validity of multiple-year municipal contracts and allowed payment despite the lack of an appropriation for a subsequent year, where the contract in question was to fulfill 'constantly recurring duties.'" *Arthur R. Murphy, AIA & Assocs.* v. *Brockton*, 364 Mass. 377, 379 (1973), quoting *Clarke* v. *Fall River*, 219 Mass. 580, 586 (1914) (garbage collection). See also *BTU I, supra* at 208, 209 & n.17 (yearly salary increases where governing body has, in effect, agreed to future funding).

[6] That statute provides in pertinent part: "Neither this nor the preceding section shall affect the right of a committee to dismiss a teacher whenever an actual decrease in the number of pupils in the schools of a town renders such action advisable." G. L. c. 71, § 42 (1984 ed.).

rollment to the "exclusive managerial prerogative" of the school committee. *Id.* at 212. Furthermore, although the statute "by its terms applies only to dismissals caused by declining enrollment, general economy and efficient use of scarce funds are analogous considerations in the decision to reduce staff size." *Id.* at 212-213. We believe it would be wholly incongruous to provide a school committee with plenary authority to abolish positions for reasons of "general economy and efficient use of scarce funds," *id.* at 212, while qualifying that authority by upholding an arbitrator's award of damages against the committee for taking such action, where there are no uncommitted, appropriated funds to satisfy that award.

The judge below found, on the basis of an affidavit submitted by the superintendent of schools, that there were no "uncommitted, appropriated funds available" in fiscal year 1981-1982 to implement the job security provision of the collective bargaining agreement. An arbitrator has no authority to award damages for breach of a provision in a collective bargaining agreement where no appropriated funds are available to implement that provision. See *Boston Teachers Local 66* v. *School Comm. of Boston*, 370 Mass. at 465, 467. See also *Marlborough* v. *Cybulski, Ohnemus & Assocs.*, 370 Mass. 157, 160-161 (1976). Accordingly, we conclude that the arbitrator has exceeded his authority, see G. L. c. 150C, § 11 (*a*) (3) (1984 ed.), and thus that the judgments below must be reversed and the cases remanded with instructions to vacate the award of damages.

*So ordered.*